OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Plaintiff has brought this personal injury action against defendant, a company that entered into a snow removal contract with a property owner. We are called upon to determine whether the company may be held liable to plaintiff for injuries she sustained when she slipped and fell on the premises. To
 
 *138
 
 decide this appeal, we must determine whether a contractor of this type owes a duty to a third person, such as plaintiff.
 

 On January 28, 1994 plaintiff slipped and fell in a parking lot owned by her employer, Miltope Corporation. Attributing her fall to an “icy condition,” plaintiff sued Melville Snow Contractors, the company under contract to plow and remove snow from the premises.
 
 [1]
 
 She alleged that Melville created the icy condition by negligently removing snow from the parking lot. Melville moved for summary judgment, contending that it owed no duty of care to plaintiff.
 

 Supreme Court denied the motion, concluding that Melville had failed to show that “there was a reasonable explanation for the existence of the ice * * * other than a failure on its part to remove snow and ice in a non-negligent manner.” The Appellate Division reversed, granted Melville’s motion for summary judgment and dismissed the complaint. The Court held that Melville owed plaintiff no duty of care. Important for purposes of this appeal, the Court also held that plaintiff’s “allegation that [Melville] created or exacerbated the hazardous condition did not provide a basis for liability.” (283 AD2d 546, 547.) We now affirm the order of the Appellate Division, but on different grounds.
 

 Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party
 
 (see Darby v Compagnie Natl. Air France,
 
 96 NY2d 343, 347 [2001];
 
 Pulka v Edelman,
 
 40 NY2d 781, 782 [1976]). Here, the issue is whether any such duty ran from Melville to plaintiff, given that Melville’s snow removal contract was with the property owner. As we have often said, the existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations
 
 (see e.g. Palka v Servicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 585-586 [1994];
 
 Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,
 
 76 NY2d 220, 226-227 [1990]).
 

 Under our decisional law a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party
 
 (see Eaves Brooks,
 
 76 NY2d at 226). Seventy-four years ago, in
 
 H.R. Moch Co. v Rensselaer Water Co.
 
 (247 NY
 
 *139
 
 160 [1928]), Chief Judge Cardozo stated that imposing liability under such circumstances could render the contracting parties liable in tort to “an indefinite number of potential beneficiaries” (i
 
 d.
 
 at 168). As a matter of policy, we have generally declined to impose liability to that degree. On the other hand, we have recognized that under some circumstances, a party who enters into a contract thereby assumes a duty of care to certain persons outside the contract
 
 (see Palka,
 
 83 NY2d at 586;
 
 Strauss v Belle Realty Co.,
 
 65 NY2d 399, 402 [1985]). Having rejected the concept of open-ended tort liability, while recognizing that liability to third persons may sometimes be appropriate, we must determine where to draw the line
 
 (see De Angelis v Lutheran Med. Ctr.,
 
 58 NY2d 1053, 1055 [1983]). Although the “policy-laden” nature of the existence and scope of a duty generally precludes any bright-line rules
 
 (Palka,
 
 83 NY2d at 585), three cases help light the way.
 

 Moch, Eaves Brooks
 
 and
 
 Palka
 
 identify contractual situations involving possible tort liability to third persons. Our analysis begins with
 
 Moch.
 
 There, the defendant entered into a contract with the City of Rensselaer to supply water to the City for various purposes, including water at the appropriate pressure for fire hydrants. A building caught fire and, because the defendant allegedly failed to supply sufficient water pressure to the hydrants, the fire spread and destroyed the plaintiffs warehouse. Although the contract was valid and enforceable as between the City and the defendant, we concluded that the contract was not intended to make the defendant answerable to anyone who might be harmed as a result of the defendant’s alleged breach. Because the plaintiff company was not a third-party beneficiary, it could not sue for breach of contract. Nor, we held, could the plaintiff succeed in tort. “[L]i-ability would be unduly and indeed indefinitely extended by this enlargement of the zone of duty”
 
 (Moch,
 
 247 NY at 168). We observed, however, that irrespective of the attendant contractual obligations, tort liability to a third person may arise where
 
 “the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm,
 
 or has stopped where inaction is at most a refusal to become an instrument for good”
 
 (id.
 
 [emphasis added]).
 

 In
 
 Eaves Brooks
 
 we continued the theme, identifying detrimental reliance as another basis for a contractor’s liability in tort to third parties. There, a commercial tenant sought to recover for property damage sustained when a sprinkler system malfunctioned and flooded the premises. The tenant sued the
 
 *140
 
 companies that were under contract with the property owner to inspect and maintain the sprinkler system. For policy reasons, we refused to extend liability to encompass the defendant companies, noting that the building owners were in a better position to insure against loss. We adhered to the general rule that “a contractual obligation, standing alone, will impose a duty only in favor of the promisee and intended third-party beneficiaries”
 
 (Eaves Brooks,
 
 76 NY2d at 226). We were careful to state, however, that tort liability may arise where “performance of contractual obligations has induced detrimental reliance on continued performance” and the defendant’s failure to perform those obligations “positively or actively” works an injury upon the plaintiff
 
 (id.).
 

 Finally, in
 
 Palka,
 
 we considered whether a maintenance company under contract to provide preventive maintenance services to a hospital assumed a duty of care to the plaintiff, a nurse who was injured when a wall-mounted fan fell on her as she was tending to a patient. The contract between the parties was “comprehensive and exclusive”
 
 (Palka,
 
 83 NY2d at 588) and required the maintenance company to inspect, repair and maintain the facilities, and to train and supervise all support service personnel. The company’s obligation to the hospital was so broad that it entirely displaced the hospital in carrying out maintenance duties and became “the sole privatized provider for a safe and clean hospital premises”
 
 (id.
 
 at 589). Because the company’s contractual obligation was comprehensive, we found this to be another instance in which a contracting provider owed a duty to “noncontracting individuals reasonably within the zone and contemplation of the intended safety services,” including the plaintiff
 
 (id.).
 

 In sum,
 
 Moch, Eaves Brooks
 
 and
 
 Palka
 
 identify three situations in which a party who enters into a contract to render services may be said to have assumed a duty of care — and thus be potentially liable in tort — to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, “launche[s] a force or instrument of harm”
 
 (Moch,
 
 247 NY at 168); (2) where the plaintiff detrimentally relies on the continued performance of the contracting party’s duties
 
 (see Eaves Brooks,
 
 76 NY2d at 226) and (3) where the contracting party has entirely displaced the other party’s duty to maintain the premises safely
 
 (see Palka,
 
 83 NY2d at 589). These principles are firmly rooted in our case law, and have been generally recognized by other authorities
 
 (see e.g.
 
 Restatement [Second] of Torts § 324A).
 

 
 *141
 
 With these precepts in mind, we conclude that plaintiff’s claim fails as a matter of law. In opposition to Melville’s motion for summary judgment, plaintiff relied almost entirely on
 
 Palka,
 
 arguing that “Defendant’s contract [with Miltope] is exclusive, and [Defendant] should be liable [for] damages caused to the Plaintiff.” A careful review of the contract between Melville and Miltope, however, defeats plaintiffs claim.
 

 Under the agreement, Melville was obligated to “clear, by truck and plow, snow from vehicular roadways, parking and loading areas, entrances and exits of the captioned property when snow accumulations exceed three (3) inches.” In addition, Melville agreed that upon Miltope’s request, it would spread a mixture of salt and sand on certain areas of the property. As for snow removal, Melville contracted to plow “during the late evening and early morning hours, and not until all accumulations have ceased, on a one time plowing per snowfall basis. If there is a plowable accum. by 4 A.M., and it is still snowing, Melville will provide a limited plowing to open up the property before 9 A.M., and if accum. continue, Melville will plow a second time during the day or in the evening after all accumulations have ended.”
 

 By the express terms of the contract, Melville was obligated to plow only when the snow accumulation had ended and exceeded three inches. This contractual undertaking is not the type of “comprehensive and exclusive” property maintenance obligation contemplated by
 
 Palka.
 
 Melville did not entirely absorb Miltope’s duty as a landowner to maintain the premises safely (see
 
 Palka,
 
 83 NY2d at 584). Indeed, the contract stated that “[i]t is the responsibility of the property manager or owner to decide whether an icy condition warrants application(s) of salt-sand by Melville. Owner must inspect property within 12 hours of work. Any defect in performance must be communicated immediately.” Although Melville undertook to provide snow removal services under specific circumstances, Miltope at all times retained its landowner’s duty to inspect and safely maintain the premises. Melville was under no obligation to monitor the weather to see if melting and refreezing would create an icy condition.
 

 Inasmuch as plaintiff failed to allege detrimental reliance on Melville’s continued performance of its contractual obligations (see
 
 Eaves Brooks,
 
 76 NY2d at 226), we look to the other possible basis for liability: whether Melville “launched a force or instrument of harm”
 
 (Moch,
 
 247 NY at 168). In this context, a defendant who undertakes to render services and then
 
 *142
 
 negligently creates or exacerbates a dangerous condition may be liable for any resulting injury (see
 
 id.
 
 at 167; Restatement [Second] of Torts § 324A [a]). Plaintiff argues that Melville’s “snow removal activities” created a “dangerous icy condition” or “increased the snow-related hazard which caused plaintiff to slip and fall.” Missing from plaintiffs complaint, bill of particulars or opposition to Melville’s summary judgment motion is any support for these allegations. Plaintiff points only to the testimony of Melville’s former corporate secretary, Kenneth Boyd, who stated that snow plowing operations can sometimes leave “residual snow or ice” on the plowed area and that failure to sand and salt the area could possibly cause snow to melt and refreeze. Melville, however, simply cleared the snow as required by the contract. Plaintiffs fall on the ice was not the result of Melville having “launched a force or instrument of harm”
 
 (Moch,
 
 247 NY at 168). By merely plowing the snow, Melville cannot be said to have created or exacerbated a dangerous condition.
 

 Accordingly, we agree with the Appellate Division that Melville owed no duty of care to plaintiff and therefore cannot be held liable in tort. However, we take this opportunity to address and clarify an aspect of that Court’s decision.
 

 In its order, the Appellate Division held that plaintiffs “allegation that [Melville] created or exacerbated the hazardous condition did not provide a basis for liability.” (283 AD2d at 547.) This ruling appears to suggest that a contractor such as Melville who creates or exacerbates a hazardous condition owes no duty of care to third persons who may be injured by the contractor’s actions. To the extent the Appellate Division’s language may be so interpreted, it is in conflict with the holdings of the other Departments
 
 [2]
 
 and even with previous holdings of the Second Department itself.
 
 [3]
 
 In our view, the “creation or exacerbation” test articulated in these cases is nothing more and nothing less than the formulation expressed by this Court in
 
 Moch,
 
 namely, whether the defendant’s actions have “advanced to such a point as to have launched a force or instrument of harm” (247 NY at 168). A snow removal contractor (or one in a similar line of work) who “creates or exacerbates” a harmful condition may generally be said to have “launched” it.
 
 *143
 
 Exacerbating or creating a dangerous condition may be a more pedestrian — or less elegant — description than launching a force or instrument of harm, but in practical terms the criteria are the same. The concepts have been applied interchangeably and should not carry different consequences.
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Melville brought a third-party action against plaintiffs employer, Miltope Corporation. Supreme Court granted Miltope’s motion for summary judgment and dismissed the third-party complaint. That part of Supreme Court’s order is not before us.
 

 [2]
 

 .
 
 See Genen v Metro-North Commuter R.R.
 
 (261 AD2d 211, 214 [1st Dept 1999]);
 
 Piccirillo v Beltrone-Turner
 
 (284 AD2d 854, 856 [3d Dept 2001]);
 
 DiSano v KBH Constr. Co.
 
 (280 AD2d 951, 952 [4th Dept 2001]).
 

 [3]
 

 .
 
 See Beckham v Board of Educ.
 
 (267 AD2d 189, 190 [1999]);
 
 Finley v Weill
 
 (264 AD2d 438, 438 [1999]).