*109
 
 OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff Ned Church, age nine, received catastrophic spinal injuries December 26, 1992, when the driver of a Volkswagen Jetta in which he was a rear seat occupant fell asleep at the wheel. The vehicle veered off the southbound traffic portion of the New York State Thruway near milepost marker 132.7, careened down a nontraversable embankment and crashed in a V-shaped ditch at the bottom. The Thruway site where the vehicle left the highway was within a 22-mile resurfacing and safety-improving project, which was completed in 1986 pursuant to an agreement between the Thruway Authority and Callanan Industries, Inc., as general contractor.
 

 Pursuant to its contract with the Thruway Authority, C allanan agreed, by a date certain, to “construct and complete in the most substantial and workmanlike manner, the construction, improvement or reconstruction of the project” identified in the project plans and specifications. The project specifications called for the removal of some 275 feet of existing guiderail in the vicinity of milepost marker 132.7 and its replacement by a longer (312.5 feet) guiderail system. The contract documents also contemplated Callanan’s use of subcontractors on the project.
 

 In a related agreement, the Thruway Authority engaged the construction engineering firm of Clough, Harbour & Associates as project “Engineer” to inspect and supervise Callanan’s compliance with the contract plans and specifications. Under the Thruway Authority’s agreement with Callanan, the engineer’s recommendation was required before final acceptance of the contractor’s work.
 

 Callanan entered into a subcontract with defendant San Juan Construction and Sales Company for the installation of the guiderail system in question. The subcontract incorporated the general contract by reference. It also stipulated that “[a] 11 drawings, * * * certifications [and] approvals of the Subcontractor shall be submitted for approval of the Architect or Engineer,” that is, “the person appointed by the Owner to supervise the work of the Contractor on behalf of the Owner.” In addition, Callanan reserved the right to demand at any time that San Juan furnish evidence of its ability to fully perform the subcontract in the manner and within the time specified in the subcontract.
 

 Suit was brought on behalf of the infant plaintiff against Callanan, San Juan and Clough Harbour. The gravamen of the
 
 *110
 
 action was both the negligent failure to complete the full 312.5 feet of new guiderailing called for by the Callanan general contract and the San Juan subcontract, and Clough Harbour’s negligent inspection and approval of the installation despite such noncompletion. Specifically, the complaint alleged that (1) San Juan installed only some 212 of the 312.5 feet of guiderailing called for by the contracts; (2) the missing portion of the guiderail installation included the place where the Jetta went out of control and left the highway; and (3) as a result of the negligent noncompletion of the guiderail installation, the infant plaintiff incurred devastating injuries when the Jetta crashed at the bottom of the embankment.
 

 After joinder of issue and discovery, Callanan and San Juan moved for summary judgment dismissing the complaint, based in part on the contention that, as purely contracting parties with respect to installation of the guiderailing, they owed no duty to plaintiffs. Plaintiffs’ response was that both defendants undertook a duty to perform safety improvements and were liable for their “negligent performance of these improvements [which] directly caused Ned Church’s injuries.” Plaintiffs described the duty claimed here as follows: “It is well established law that where one undertakes work on a public highway which if not done carefully will create dangerous conditions to the general public, he is under a duty to use requisite care and that duty cannot be delegated.” They submitted opinion evidence that, had the guiderailing been completed in accordance with the Callanan and San Juan contracts, the Jetta would have been prevented from plunging down the embankment and crashing at the bottom, thereby causing the infant plaintiff’s serious injuries. Supreme Court denied the motion for summary judgment. On appeal from that denial, the Appellate Division reversed and granted summary judgment to San Juan (285 AD2d 16).
 
 [1]
 
 After further proceedings not relevant to this appeal, a final judgment was entered at Supreme Court.
 

 The case is before this Court as of right, pursuant to CPLR 5601 (d), on the basis of the two-Justice dissent at the Appellate Division. We now affirm.
 

 The threshold and dispositive question on this appeal is whether San Juan owed the infant plaintiff a duty of care. The existence and scope of a duty of care is a question of law for
 
 *111
 
 the courts entailing the consideration of relevant policy factors
 
 (see Hamilton v Beretta U.S.A. Corp.,
 
 96 NY2d 222, 232 [2001]). In this case, any duty San Juan had with respect to the installation of guiderailing at milepost marker 132.7 on the southbound Thruway arose exclusively out of San Juan’s contractual undertakings set forth in its subcontract with Callanan. In other words, San Juan had no preexisting duty imposed by law to install guiderailing at that point on the Thruway.
 

 Beginning with Chief Judge Cardozo’s landmark decision in
 
 H.R. Moch Co. v Rensselaer Water Co.
 
 (247 NY 160 [1928]), we have consistently held that, ordinarily, breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor
 
 (see Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,
 
 76 NY2d 220, 226 [1990]). Rather, the injured party is relegated to contractual remedies, if any. This reflects generally accepted legal principles, largely derived from
 
 Moch.
 
 “[I]f the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent [to contract], then contract law should be the
 
 only
 
 theory upon which liability would be imposed” (Prosser and Keeton, Torts § 92, at 656 [5th ed] [emphasis in original]).
 

 As more extensively discussed in
 
 Espinal v Melville Snow Contrs.
 
 (98 NY2d 136, 139-141 [2002]), our cases have nevertheless thus far identified three sets of circumstances, as exceptions to the general rule, in which a duty of care to noncontracting third parties may arise out of a contractual obligation or the performance thereof. In such cases, the promisor is subject to tort liability for failing to exercise due care in the execution of the contract. The first is where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk
 
 (see id.
 
 at 139, 141-142 [“a defendant who undertakes to render services and then negligently creates or exacerbates a dangerous condition may be liable for any resulting injury” (citing
 
 Moch,
 
 247 NY at 167)]).
 
 Moch
 
 describes that conduct, subjecting the promisor to tort liability, as “launch[ing] a force or instrument of harm” (247 NTY at 168;
 
 see Cubito v Kreisberg,
 
 51 NY2d 900 [1980],
 
 affg for reasons stated in op below
 
 69 AD2d 738 [1979]).
 

 The second set of circumstances giving rise to a promisor’s tort liability is where the plaintiff has suffered injury as a result of reasonable reliance upon the defendant’s continuing performance of a contractual obligation
 
 (see Espinal,
 
 98 NY2d
 
 *112
 
 at 140 [“where the plaintiff detrimentally relies on the continued performance of the contracting party’s duties”];
 
 see also
 
 Prosser and Keeton,
 
 supra
 
 at 658; Restatement [Second] of Torts § 324A [c]).
 

 Third, we have imposed tort liability upon a promisor “where the contracting party has entirely displaced the other party’s duty to maintain the premises safely” (Espinal, 98 NY2d at 140 [citing
 
 Palka v Servicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 589 (1994)]). In contrast to the first exception, the promisor under such circumstances may indeed be liable for failing to make conditions safer for the injured party.
 

 Plaintiff fails to qualify under any of the foregoing exceptions. There is no evidence in the record that San Juan’s incomplete performance of its contractual duty to install 312.5 feet of guiderailing falls within the first exception — i.e., that it created or increased the risk of the Jetta’s divergence from the roadway beyond the risk which existed even before San Juan entered into any contractual undertaking. In this respect, San Juan classically exemplifies the promisor described in
 
 Moch
 
 who is immune from liability because the breach of contract consists “merely in withholding a benefit * * * where inaction is at most a refusal to become an instrument for good”
 
 (Moch,
 
 247 NY at 167-168). San Juan’s failure to install the additional length of guiderail did nothing more than neglect to make the highway at Thruway milepost marker 132.7
 
 safer
 
 — as opposed to less safe — than it was before the repaving and safety improvement project began.
 

 Likewise, this case does not fall within the second exception. It is not (and cannot be) contended here that the tragic loss of control of the Jetta occurred because the driver “detrimentally relie [d] on the continued performance of [San Juan’s contractual] duties”
 
 (Espinal,
 
 98 NY2d at 140) when she failed to remain awake and alert at the wheel.
 

 Nor can San Juan’s liability be sustained under an assumption of the Thruway Authority’s safety duty theory under
 
 Palka
 
 or
 
 Espinal,
 
 both of which are instructive while reaching opposite results. They teach that tort liability for breach of contract will not be imposed merely because there is some safety-related aspect to the unfulfilled contractual obligation. If liability invariably follows nonperformance of some safety-related aspect of a contract, the exception would swallow up the general rule against recovery in tort based merely upon the failure to act as promised. Thus, the open-ended possibility of
 
 *113
 
 liability apprehended by Chief Judge Cardozo in
 
 Moch
 
 would become a reality. Our decision denying the promisors’ liability in
 
 Eaves Brooks
 
 demonstrates that there are limitations on the imposition of liability based upon a defendant’s assumption of its promisee’s duty to safeguard third persons.
 

 Palka
 
 illustrates the kind of additional factors which may support recovery in tort upon the theory that the promisor assumed the promisee’s safety responsibilities. In
 
 Palka,
 
 the plaintiff nurse-employee of a hospital was injured when a defectively maintained fan fell on her while she was caring for a patient. In holding the proof sufficient to impose liability upon the maintenance company with whom the hospital had a service contract, we relied upon the evidence that the contract was “comprehensive and exclusive” (83 NY2d at 588) as to preventative maintenance, inspection and repair, thus making the defendant “the sole privatized provider for a safe and clean hospital premises”
 
 (id.
 
 at 589). Moreover, we pointed out that, in undertaking all aspects of safety inspection and repair at the health facility, “defendant ‘does or ought to foresee the likelihood of physical harm to third persons as a result of
 
 reasonable reliance by the owner
 
 on [it] to discover or repair dangerous conditions’ ”
 
 (id.
 
 [quoting Prosser and Keeton,
 
 supra
 
 § 93, at 670] [emphasis supplied]).
 

 Contrariwise, in
 
 Espinal,
 
 we declined to impose liability upon a snow removal contractor, absent evidence that it created or exacerbated a dangerous condition because, under the terms of the contract, the promisee effectively “at all times retained its landowner’s duty to inspect and safely maintain the premises” (98 NY2d at 141).
 

 This case falls comfortably within the
 
 Espinal
 
 precedential orbit.
 
 [2]
 
 Unlike the circumstances presented by
 
 Palka,
 
 San Juan did not comprehensively contract to assume all the Thruway Authority’s safety-related obligations with respect to the guide-rail system. Instead, the Thruway Authority retained a separate project engineer to provide inspection and supervision of all aspects of the project, including contract compliance with respect to the stipulated length of the guiderail system. These roles of the project engineer were specifically incorporated into
 
 *114
 
 both sets of the relevant contract documents, which required the engineer’s approval of the work.
 

 The San Juan contract can be contrasted with Callanan’s. In its contract with the Thruway Authority, Callanan assumed significant obligations to assure that the construction complied with the project specifications and that such work was completed in a timely fashion, thus inferably undertaking an obligation to inspect and oversee all aspects of the subcontractors’ work.
 

 Undisputably, under the contractual framework, San Juan never assumed the Thruway Authority’s common-law tort duty to oversee and insure the installation of the adequately safe length of guiderailing in the vicinity of milepost marker 132.7 of the southbound Thruway. Likewise, inspection responsibilities as to the proper length of guiderail were never contractually shifted to San Juan (see Prosser and Keeton,
 
 supra
 
 § 93, at 669
 
 [“Tort Liability for Physical Harm to Persons and Tangible Things Resulting from Failure to Repair or Inspect”]).
 
 Rather, the Thruway Authority (owner) either retained those safety responsibilities
 
 (see Espinal,
 
 98 NY2d at 141), or delegated them under contracts with Callanan or Clough Harbour. That being so, San Juan had no reason “to foresee the likelihood of physical harm to third persons as a result of reasonable reliance by the [Thruway Authority] on [it] to discover [the safety shortfall]”
 
 (Palka,
 
 83 NY2d at 589).
 

 For the foregoing reasons, we conclude that San Juan owed no cognizable duty to plaintiff to complete its contractual obligation under the circumstances of this case. Accordingly, the judgment of Supreme Court and the prior order of the Appellate Division brought up for review should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.
 

 [1]
 

 . During the pendency of the appeals, plaintiffs settled their suits against Callanan and Clough Harbour.
 

 [2]
 

 . Contrary to plaintiffs’ contention,
 
 Espinal
 
 and the cases it discusses cannot be distinguished on the basis that the contractual obligations in all of them were executory, rather than executed, as in the instant case. The principles outlined in
 
 Espinal
 
 equally apply to executed contracts, such as an undertaking to repair a single device (see Prosser and Keeton,
 
 supra
 
 § 93, at 669-670).