■■■ BRADLEY F. HANMER et al., Respondents, v BELL ATLANTIC, INC., Formerly Known as NYNEX CORPORATION, Respondent, and BALDWINSVILLE ENTERPRISES, Appellant. [755 NYS2d 360] —Appeal from an order of Supreme Court, Onondaga County (Carni, J.), entered April 1, 2002, which denied the motion of defendant Baldwinsville Enterprises for summary judgment dismissing the amended complaint and the cross claim against it.

It is hereby ordered that the order so appealed from be and the same hereby is affirmed without costs.

Memorandum: We affirm the order denying the motion of Baldwinsville Enterprises (defendant) for summary judgment dismissing the amended complaint and cross claim against it on the sole ground that plaintiffs have raised an issue of fact whether defendant has by oral contract entirely displaced the duty of defendant Bell Atlantic, Inc., formerly known as NYNEX Corporation, to bury the telephone wires that were left exposed on plaintiffs' premises (*see Espinal v Melville Snow Contrs.,* 98 NY2d 136, 140; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579, 589).

All concur except Kehoe, J., who dissents in part and votes to modify in accordance with the following memorandum.

Kehoe, J. (dissenting in part). I respectfully dissent in part. I disagree with the majority that there is an issue of fact concerning the duty of defendant Baldwinsville Enterprises (Baldwinsville) to plaintiffs. I thus would modify the order by granting that part of the motion of Baldwinsville for summary judgment dismissing the amended complaint against it.

Defendant Bell Atlantic, Inc., formerly known as NYNEX Corporation (Bell), and Baldwinsville entered into a contract, as evidenced by certain correspondence and expressed in an oral work order issued on November 26, 1996. The contract called for Baldwinsville to bury certain telephone wires owned by Bell within as few as 5 days and no more than 14 or 15 days after the issuance of the work order. The wires ran from a utility box in the backyard of the residence of plaintiffs to the residence of their adjoining neighbor. On February 17, 1997, before Baldwinsville had performed its contractual obligations, plaintiff Bradley F. Hanmer was injured when he tripped and fell over the unburied wires while walking in his yard. The wires ultimately were buried by another independent contractor at Bell's request.

I disagree with the majority's conclusion that, under the circumstances, Baldwinsville had or might have had a duty of due care to plaintiffs arising out of its contractual obligation to Bell to bury the wires. "A defendant stands liable in negligence only for breach of a duty of care owed to the plaintiff" (*Sanchez v State of New York,* 99 NY2d 247, 252; *see Pulka v Edelman,* 40 NY2d 781, 782, *rearg denied* 41 NY2d 901). "The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts" (*Sanchez,* 99 NY2d at 252; *see Di Ponzio v Riordan,* 89 NY2d 578, 583; *De Angelis v Lutheran Med. Ctr.,* 58 NY2d 1053, 1055), based on the "consideration of relevant policy factors" (*Church v Callanan Indus.,* 99 NY2d 104, 111; *see Hamilton v Beretta U.S.A. Corp.,* 96 NY2d 222, 232; *De Angelis,* 58 NY2d at 1055). In this case, Baldwinsville had no duty to plaintiffs apart from any duty of due care that might have arisen out of its "contractual undertakings" to Bell (*Church,* 99 NY2d at 111). It is well established that a breach of a "contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*Espinal v Melville Snow Contrs.,* 98 NY2d 136, 138, citing *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 76 NY2d 220, 226; *see generally Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579, 586-587).

In *Espinal* (98 NY2d at 140), the Court of Appeals delimited the "three situations in which a party who enters into a contract to render services may be said to have assumed a duty of care—and thus be potentially liable in tort—to third persons: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm' (*Moch [Co. v Rensselaer Water Co.*], 247 NY [160,] 168); (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties (*see Eaves Brooks,* 76 NY2d at 226)[;] and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely (*see Palka,* 83 NY2d at 589)." Contrary to the majority's conclusion, there is no basis on this record for holding Baldwinsville liable to plaintiffs under that third prong. Indeed, the holdings of *Church* and *Espinal* require that we grant summary judgment to Baldwinsville, which "owed no cognizable duty to plaintiff[s] to complete its contractual obligation under the circumstances of this case" (*Church,* 99 NY2d at 114).

It cannot be said here that, by the terms of the contract between Baldwinsville and Bell, Baldwinsville's limited safety or maintenance obligations were so " 'comprehensive and exclusive' " that they "entirely displaced" Bell's continuing obligations to maintain the telephone wires or the real property in a safe condition (*Espinal,* 98 NY2d at 140; *see Church,* 99 NY2d at 114; *Palka,* 83 NY2d at 589; *see also Bradley v Benchmark Mgt. Corp.,* 294 AD2d 879). Thus, "[p]laintiff[s] fail[ ] to qualify under" that narrow exception to the general rule of nonliability to third parties for a contractual breach (*Church,* 99 NY2d at 112; *see Espinal,* 98 NY2d at 138-142). Baldwinsville is in a position no different from that of the highway construction subcontractor in *Church* (99 NY2d at 111) or the snow removal contractor in *Espinal* (98 NY2d at 138-142), both of which were held as a matter of law to owe no duty to an injured third party. The foregoing cases "teach that tort liability for breach of contract will not be imposed merely because there is some safety-related aspect to the unfulfilled contractual obligation. If liability invariably follows [from] nonperformance of some safety-related aspect of a contract, the exception would swallow up the general rule against recovery in tort based merely upon the failure to act as promised" (*Church,* 99 NY2d at 112).

Footnote 2 in *Church* (99 NY2d at 114) further bears on the facts presented herein. It reads: "Contrary to plaintiff's contention, *Espinal* and the cases it discusses cannot be distinguished on the basis that the contractual obligations in all of them

were executory, rather than executed, as in the instant case. The principles outlined in *Espinal* equally apply to executed contracts, *such as an undertaking to repair a single device*" (*id.* [emphasis added]).

The contractual obligations at issue in this case are distinguishable from those at issue in *Palka,* in which the injured third party was permitted to recover. In *Palka,* the contract between defendant maintenance company and the hospital that employed plaintiff was " 'comprehensive and exclusive' * * * as to preventive maintenance, inspection and repair, thus making the defendant 'the sole privatized provider for a safe and clean hospital premises' " (*Church,* 99 NY2d at 113, quoting *Palka,* 83 NY2d at 588-589). Moreover, in *Palka* (83 NY2d at 589), the injured plaintiff was not one of a "faceless or unlimited universe of persons" but rather was a member of a "known and identifiable group—hospital employees, patients and visitors"— for whose specific benefit the maintenance company's contractual obligations were to be performed. Here, in contrast, Baldwinsville's contractual obligation to perform the single act of burying the wires was to be performed for the benefit of Bell and its customers, not for anyone who might traverse the land and trip on the wires. Plaintiffs herein are thus in a position far more analogous to that of the passenger not permitted to recover damages in *Church*, the highway construction case, and to that of the employee not permitted to recover damages in *Espinal*, the snow removal case, than to that of the nurse permitted to recover damages in *Palka*.

I further note my disagreement with the majority's implicit conclusion that the proper interpretation and legal import of the contract between Bell and Baldwinsville remains an issue for the trier of fact. The existence of the contract is conceded by Baldwinsville, and the material terms of the contract are undisputed, clear, and unambiguous. As plaintiffs allege, those material terms called for Baldwinsville to bury the wires within some specified time (or, as Baldwinsville concedes, within at least some reasonable period). Under the circumstances presented, the proper interpretation of the contract—including the critical issue of whether the contractual maintenance obligation of Baldwinsville was such as to entirely displace the duty of Bell, thereby placing Baldwinsville under a duty of care to plaintiffs—presents an issue of law for the court to resolve (*see Church,* 99 NY2d at 111). Present—Pigott, Jr., P.J., Pine, Wisner, Kehoe and Gorski, JJ.