■ JEAN PATRICK BIENAIME et al., Respondents-Appellants, v GARY REYER, Doing Business as ALL ELECTRIC, Defendant and

Third-Party Plaintiff-Respondent-Appellant. QUALITY CARTON, INC., Third-Party Defendant-Appellant-Respondent. [837 NYS2d 737]—

In an action, inter alia, to recover damages for personal injuries, etc., the third-party defendant appeals, as limited by its brief, from so much of an order of the Supreme Court, Orange County (Lubell, J.), dated March 1, 2006, as denied its cross motion for summary judgment dismissing the complaint and the third-party complaint, the defendant third-party plaintiff cross-appeals, as limited by his brief, from so much of the same order as denied his motion for summary judgment dismissing the complaint, and the plaintiffs cross-appeal from stated portions of the same order.

Ordered that the order is affirmed insofar as appealed from and cross-appealed from by the defendant third-party plaintiff, with one bill of costs payable to the plaintiffs; and it is further,

Ordered that the cross appeal by the plaintiffs is dismissed.

The plaintiff Jean Patrick Bienaime (hereinafter the plaintiff) sustained personal injuries while cleaning a press machine owned and operated by his employer, the third-party defendant, Quality Carton, Inc. (hereinafter Quality). The machine consisted of, among other things, print rollers upon which ink would collect during the carton fabrication and printing process. Several times throughout the day, these internal ink rollers needed to be cleaned. It is uncontroverted that the machine was equipped with a washing system meant to clean the rollers when the machine was in a closed position. However, the wash system was not functioning at the time of the accident. The system could have been cleaned by shutting it down, placing the machine in the open position, and washing the internal rollers of the ink, but such a process would have been time-consuming and was not employed. Hence, it was the custom of Quality's employees to clean the press machine while it was in the open position and still operating.

The press machine was designed with a safety interlock, the function of which was to shut off power to the machine's main

drive system when the various sections of the machine were separated. The interlock was designed with a limit switch, which was wired into the electrical circuitry of the machine. When the machine is disassembled, the limit switch is supposed to be tripped and prevent the internal rollers from operating. The limit switch was never operational while the press machine was in use at Quality.

Prior to the plaintiff's accident, Quality hired the defendant, Reyer, doing business as All Electric (hereinafter Reyer), to perform various electrical repairs on the press machine. Reyer was initially hired to complete the installation of the machine so that it would operate at running speed. Although Reyer admitted that he lacked the necessary wiring diagrams to enable him to safely repair the machine, he agreed to bring the machine to running speed without the diagrams.

On August 11, 1998 Reyer rerouted the electrical power from one of the machine's circuits and onto another circuit by putting a jumper cable from the "jog circuit," to the "run circuit," which caused the machine to run at a faster rate of speed. On October 9, 1998 he worked on the haul-off switches and replaced the brake on the registration motor. On December 7, 1998 Reyer assisted workers from General Electric when they replaced the main drive control, added a stop/start switch, and replaced the internal portion of the control panel along with the major controller. On June 16, 1999 Reyer performed additional electrical work on the press machine, which included rewiring controls to bypass a transformer, and replacing a control transformer and a broken conduit. On October 10, 2001 Reyer repaired a broken wire on the limit switch, which he was called in to fix following the accident at issue.

The plaintiffs contend that it was Reyer's responsibility to check the limit switch and that it was improper for Reyer to place the machine into operation without first checking the wiring diagrams to ascertain whether there were any safety devices in the machine which needed to be properly reassembled. In his affidavit, the plaintiffs' expert, Craig Jacobs, stated that Reyer had an obligation to conduct a safety inspection of the press machine and that his failure to do so rendered the machine less safe. Jacobs stated that Reyer violated mandatory practices and procedures applicable to all electricians by repairing the machine without its electrical diagrams, and in failing to perform a test run of the machine in order to determine whether its safety systems and devices were functioning. It was Jacobs's opinion that as a direct result of Reyer's failure to follow the universally accepted safety practices and procedures, Reyer

rendered the machine more dangerous to operate than it had been. Reyer admitted in his deposition testimony that, in the ordinary course of events, he would test the limit switch to make sure it worked but that he never made the required checks on the machine's safety circuits and switches at any time prior to the accident.

Reyer moved for summary judgment dismissing the complaint, and Quality cross-moved for summary judgment dismissing the complaint and the third-party complaint. Both Reyer and Quality contended that Reyer was not responsible for the accident's occurrence in that, inter alia, Reyer did not launch a force or instrument of harm (*see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]). The Supreme Court denied both the motion and the cross motion. We affirm.

Generally, a contractual obligation, standing alone, is insufficient to give rise to tort liability in favor of a noncontracting third party (*id.*). However, an exception to this general rule exists where "the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk, sometimes described as conduct that has 'launch[ed] a force or instrument of harm' " (*Regatta Condominium Assn. v Village of Mamaroneck*, 303 AD2d 739, 740 [2003], quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928]; *see Espinal v Melville Snow Contrs., supra* at 140-142).

Here, questions of fact exist as to whether Reyer launched a force of instrument or harm and whether he created or exacerbated any allegedly dangerous condition (*see Church v Callanan Indus.*, 99 NY2d 104, 111 [2002]; *Espinal v Melville Snow Contrs., supra* at 141).

Accordingly, the Supreme Court properly denied Reyer's motion for summary judgment dismissing the complaint and Quality's cross motion for summary judgment dismissing the complaint and the third-party complaint.

The cross appeal by the plaintiffs must be dismissed. Since the order denied Reyer's motion for summary judgment dismissing the complaint and that branch of Quality's cross motion which was for summary judgment dismissing the complaint, the plaintiffs are not aggrieved. The alternative ground for affirmance asserted by the plaintiffs need not be reached in light of our determination finding the existence of triable issues of fact with respect to whether Reyer launched a force or instrument of harm, or created or exacerbated an allegedly dangerous condition (*see* CPLR 5511; *Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539, 544-545 [1983]; *Schramm v Cold*

*Spring Harbor Lab.*, 17 AD3d 661, 663 [2005]). Spolzino, J.P., Krausman, Skelos and Dickerson, JJ., concur. [*See* 11 Misc 3d 1060(A), 2006 NY Slip Op 50326(U) (2006).]