■ MARIE FIOTTO VIGNAPIANO, Appellant, v HERBERT CONSTRUCTION Co. et al., Defendants, and CUSHMAN WAKEFIELD, INC., et al., Respondents. [846 NYS2d 610]—

In an action to recover damages for personal injuries, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Kings County (Harkavy, J.), dated August 9, 2006, as granted that branch of the motion of the defendants Cushman Wakefield, Inc., and State Street Bank and Trust Company of Connecticut, National Association, which was for summary judgment dismissing the complaint insofar as asserted against the defendant Cushman Wakefield, Inc.

Ordered that the order is affirmed insofar as appealed from, with costs.

Contrary to the plaintiff's contention, the Supreme Court

properly granted that branch of the motion of the defendants Cushman Wakefield, Inc. (hereinafter Cushman & Wakefield), and State Street Bank and Trust Company of Connecticut, National Association, which was for summary judgment dismissing the complaint insofar as asserted against Cushman & Wakefield. "[A] contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *see Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 [1990]; *Huttie v Central Parking Corp.*, 40 AD3d 704, 705 [2007]). Cushman & Wakefield established its prima facie entitlement to judgment as a matter of law by demonstrating that its management contract with the predecessor of the plaintiff's employer did not give rise to a duty of care to the plaintiff. In opposition, the plaintiff failed to raise a triable question of fact as to whether she detrimentally relied on Cushman & Wakefield's continued performance of its duties (*see Church v Callanan Indus.*, 99 NY2d 104, 111-112 [2002]; *Espinal v Melville Snow Contrs.*, 98 NY2d at 140; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d at 226). In her examination before trial, the plaintiff testified that approximately two months before the accident, she called "[b]uilding management" to express concern that the shelves in her office were slanted downward on the ends, and in response, someone inspected the shelves. However, the plaintiff only speculates that this inspector was an employee of Cushman & Wakefield, as opposed to an employee of her employer's in-house property management department. Further, even if the inspector was an employee of Cushman & Wakefield, the plaintiff did not raise a triable question of fact as to whether Cushman & Wakefield's alleged nonfeasance in failing to discover the alleged defect in the shelves "launche[d] a force or instrument of harm" (*Espinal v Melville Snow Contrs.*, 98 NY2d at 140 [internal quotation marks omitted]; *see Church v Callanan Indus.*, 99 NY2d at 112). Nor did the plaintiff raise a question of fact as to whether Cushman & Wakefield entirely displaced the duty of the plaintiff's employer to maintain the premises safely (*see Espinal v Melville Snow Contrs.*, 98 NY2d at 140; *Church v Callanan Indus.*, 99 NY2d at 112). Not only did her employer maintain an in-house property management department at all relevant times, but the management contract at issue provided that the plaintiff's employer retained substantial control over the management and operation of the premises (*see Roveccio v Ry Mgt. Co., Inc.*, 29 AD3d 562, 562-563 [2006]; *Hagen v Gilman Mgt. Corp.*, 4 AD3d 330, 331 [2004]; *cf. Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579 [1994]). Crane, J.P., Fisher, Carni and McCarthy, JJ., concur.