■ GERALDINE MYLES, Respondent, v SPRING VALLEY MARKETPLACE, LLC, Defendants, and CHRISTMAS TREE SHOPS, INC., Respondent/Third-Party Plaintiff-Respondent. McCUE CORPORATION, Third-Party Defendant-Appellant. [35 NYS3d 66]—

Order, Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about August 3, 2015, which denied third-party defendant McCue Corporation's motion to dismiss the third-party complaint and the complaint as against defendant Christmas Tree Shops, Inc. (CTS), unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

Plaintiff alleges that on June 7, 2011, around dusk, she tripped when the tip of her right foot hit a metal bar on the ground that formed part of a shopping cart corral in the parking lot of defendant CTS' store, located in a shopping center owned by defendant Spring Valley Marketplace (SVM). CTS brought a third-party action against McCue, which designed and sold it the corral, seeking contribution, common-law indemnification and contractual indemnification based on claims sounding in negligence, breach of warranty, strict liability, and breach of contract.

The submissions on the motion establish that "the defect is, under the circumstances, physically insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses" (*Hutchinson v Sheridan Hill House Corp.*, 26 NY3d 66, 79 [2015]; *see also Garcia v 549 Inwood Assoc., LLC*, 136 AD3d 555 [1st Dept 2016]; *Forrester v Riverbay Corp.*, 135 AD3d 448 [1st Dept 2016]). McCue presented photographs taken by plaintiff's photographer, which show that the metal bar was only three-eighths of an inch above the surface of the parking lot. Those photographs, and others in the record that were shown to plaintiff at her deposition, establish that the bar was not hidden or covered in any way and did not constitute a trap.

McCue also presented the deposition transcripts of plaintiff, CTS' assistant manager, and McCue's comptroller. Plaintiff testified that the tip of her foot hit the bar, but could not identify any defects in the bar or the parking lot surface. While she testified at one point that there was "bad visibility" because the bar was under the canopy, when asked if she saw the bar the moment before she tripped, she replied as follows: "It is hard to say. I was looking straight ahead to get the cart." When asked again if she had looked at the ground, plaintiff repeated that she was "looking straight ahead" and did not remember seeing the bar.

CTS' assistant manager testified that although there was no lighting inside the corral, there were between five and ten lampposts in the parking lot and that the corral was well lit when he inspected it shortly after the accident. He also testified that there was no space between the surface of the parking lot and the bar, and that there had been no complaints about the bar prior to plaintiff's accident. McCue's comptroller testified that the cart corral had been sold for more than 10 years and that he was not aware of any claims or suits.

An expert affidavit submitted by CTS stated that the bar did not violate any safety codes, rules, or regulations, was not

defectively designed, and did not present a tripping hazard. The expert stated that at the time of his August 9, 2013 visit, the bar was flush with the ground and its height was measured consistently at one-eighth of an inch above the pavement. He also stated that the bar was smooth, shiny and reflective, and its silver color contrasted sharply with the texture and color of the black, grainy surface of the parking lot, which made it conspicuous and easily observable, even at night; that the exterior weather enclosure covering the corral had clear plastic sides, which allowed the surface under the corral to be illuminated by natural light or the lampposts in the parking lot; and that the bar was located near the open entrance to the corral, which also permitted light to illuminate it. Furthermore, CTS presented the specifications for the cart corral which showed that the metal bar itself was only one-fourth of an inch in height, and that the sides of the corral were clear.

In opposition, plaintiff failed to raise a triable issue of fact as to the size of the defect itself, or whether "its intrinsic characteristics or the surrounding circumstances magnif[ied] the dangers it pose[d], so that it unreasonably imperil[ed] the safety of [plaintiff]" (*Hutchinson*, 26 NY3d at 78 [internal quotation marks omitted]). Plaintiff's "guess" that the height of the bar was "maybe an inch or so" off the ground is not probative and is contradicted by the specifications and the photographs in the record. Her claim that she did not see the bar due to insufficient lighting, is belied by her deposition testimony that she did not see it because she was looking straight ahead at the carts in the corral.

Plaintiff's arguments that the motion court properly denied summary judgment dismissing the complaint as against CTS because McCue failed to argue in its moving papers below that the bar constituted a "trivial defect" and because the court had previously denied CTS' motion for summary judgment on that specific ground are unavailing. While McCue did not make an express trivial defect argument as a grounds for dismissing the complaint as against CTS, it did seek summary judgment on the basis that, as a contractor, it did not owe a duty to plaintiff, a noncontracting third party. In deciding that issue, the motion court reviewed all submissions and determined that the design of the bar, specifically, its height, formed the basis for potential liability under an *Espinal* (*Espinal v Melville Snow Contrs.*, 98 NY2d 136 [2002]) exception. Since the height of the bar was a basis for the motion court's decision, we may consider the issue on appeal. While the motion court denied CTS' prior motion for summary judgment, the doctrine of law of the case only applies

to courts of coordinate jurisdiction and is not binding on this Court (*see Martin v City of Cohoes*, 37 NY2d 162, 165 [1975]). Concur—Friedman, J.P., Andrias, Moskowitz, Kapnick and Webber, JJ.