■ Euripedes Karydas, Respondent, v Michelle Ferrara-Ruurds, Defendant, and Douglas Elliman Property Management, Appellant. (And a Third-Party Action.) [37 NYS3d 16]—

Order, Supreme Court, New York County (Debra A. James, J.), entered October 28, 2015, which, to the extent appealed from, denied defendant Douglas Elliman Property Management's motion for summary judgment dismissing the negligence cause of action as against it, affirmed, without costs.

While defendant established that its managing agreement with the coop board was not so "comprehensive and exclusive" as to displace entirely the board's duty to maintain the premises (see Caldwell v Two Columbus Ave. Condominium, 92 AD3d 441, 442 [1st Dept 2012]), issues of fact exist whether, in its attempts to repair a minor leak, it negligently exacerbated the problem, and "launched a force or instrument of harm," i.e., what plaintiff called a "cascad[e]" of water into his unit (see Espinal v Melville Snow Contrs., 98 NY2d 136, 139 [2002] [internal quotation marks omitted]; see e.g. Grant v Caprice Mgt. Corp., 43 AD3d 708 [1st Dept 2007]).

Regardless of which party had the burden of proof on the Espinal exception, the evidence submitted on the motion established that defendant attempted to fix the leak or leaks on several occasions and that the problem persisted and culminated in a flood of water "cascading" into plaintiff's apartment. Plaintiff testified that the leak began on March 8, 2010, and lasted a few days. The leak started again in May 2010, and reoccurred in August 2010 and December 2010, and finally, the "big finale" of water cascading into plaintiff's unit occurred in August 2011. Defendant attempted to fix the leaks on several occasions. Invoices dated March 10, April 13, September 28, and December 30, 2010 indicate that plumbing work was done in response to plaintiff's complaints about water leaks. The notations in these invoices do not definitively establish whether or not defendant's plumbers "launched a force or instrument of harm." Thus, contrary to the dissent's contention, the evidence raises an issue of fact as to whether defendant's attempts to fix the water leak exacerbated the condition that led to the more serious leak that occurred in August 2011. Concur—Tom, J.P., Mazzarelli, Manzanet-Daniels and Gesmer, JJ.

Andrias, J., dissents in a memorandum as follows: Plaintiff alleges that he suffered property damage caused by a "continual leak" emanating from defendant Ferrara-Ruurds's apartment, located on the floor above plaintiff's in the cooperative apartment building. He seeks to recover from defendant Douglas Elliman Property Management (defendant), the managing agent, on the ground that it breached its duty of care regarding the condition and maintenance of the premises by failing to

respond to his repeated maintenance requests and to remedy the condition.

The majority affirms the order denying defendant's motion for summary judgment on the ground that issues of fact exist whether defendant, "in its attempts to repair a minor leak, . . . negligently exacerbated the problem, and 'launched a force or instrument of harm.' " However, there is no competent evidence that defendant, an agent for a disclosed principal, was in exclusive control of the building or that the actions of the plumbers it retained created a dangerous condition or increased the risk of water infiltrating into plaintiff's apartment. Therefore, I respectfully dissent.

An agent for a disclosed principal "is not liable to third persons for non-feasance but only for affirmative acts of negligence or other wrong" (*Pelton v 77 Park Ave. Condominium*, 38 AD3d 1, 11 [1st Dept 2006], *overruled on other grounds Fletcher v Dakota, Inc.*, 99 AD3d 43 [1st Dept 2012]). "While a duty of care on the part of the managing agent may arise where there is a comprehensive and exclusive management agreement between the agent and the owner which displaces the owner's duty to safely maintain the premises" (*Roveccio v Ry Mgt. Co., Inc.*, 29 AD3d 562, 562 [2d Dept 2006]), as the majority finds, the agreement at issue is not such a contract (*see Davis v Prestige Mgt. Inc.*, 98 AD3d 909, 910 [1st Dept 2012]).

A duty of care to plaintiff, a noncontracting third party, may also be found if defendant, in failing to exercise reasonable care in the performance of its duties, "launch[ed] a force or instrument of harm" that caused plaintiff damage (*Church v Callanan Indus.*, 99 NY2d 104, 111-112 [2002]). This exception to the general rule that a contractual obligation, standing alone, will not give rise to tort liability in favor of a third party requires a finding that the defendant affirmatively made the condition less safe, not that the defendant failed "to become an instrument for good" (*Church*, 99 NY2d at 112 [internal quotation marks omitted] [incomplete installation of guardrail on highway insufficient to support claim because it did not make road less safe, only failed to make it more safe]). Thus, for defendant to be held liable, the repairs by its plumber must have created or exacerbated the dangerous condition that caused plaintiff's property damage (*see Kerwin v Fusco*, 138 AD3d 1398 [4th Dept 2016] [repairs made to the stair tread did not launch a force or instrument of harm by exacerbating the dangerous condition of the stairway or making it less safe]). A mere act of neglect, or failure to exercise due care, does not

suffice (*see Stiver v Good & Fair Carting & Moving, Inc.*, 9 NY3d 253, 257 [2007] [where plaintiff was injured when his car rear ended another car that was stopped in a lane of traffic due to mechanical failure, the service station that inspected the car cannot be said to have launched an instrument of harm since there was no reason to believe that the inspection made the car less safe than it was beforehand]).

As a threshold matter, we must first determine who bore the burden of proof on the *Espinal* exception. "[T]he prima facie showing which a defendant must make on a motion for summary judgment is governed by the allegations of liability made by the plaintiff in the pleadings" (*Foster v Herbert Slepoy Corp.*, 76 AD3d 210, 214 [2d Dept 2010]). Thus, if the pleadings contained factual allegations that would support an *Espinal* exception, then the defendant would bear the burden of proof to show that the exception was not applicable. Conversely, if the plaintiff did not allege facts in his pleadings that would establish that an exception might apply, then he would bear the burden of proving that it was applicable (*see Brathwaite v New York City Hous. Auth.*, 92 AD3d 821, 824 [2d Dept 2012], *lv denied* 19 NY3d 804 [2012]).

Plaintiff alleged in his pleadings that on multiple occasions defendant sent a plumber to fix the leaks as they occurred and that, despite these efforts, incidents of water infiltration continued, culminating in the final leak in August 2011. As the basis for his negligence claim, plaintiff asserted that as a result of defendant's failure to adequately respond to his requests and to remedy the problem in the apartment above him, the water leak continued for several months. However, while plaintiff alleged nonfeaseance and inadequate investigation and repair, he did not assert that the actions of plaintiff's plumbers caused the leaks or that they made the condition more dangerous. Accordingly, defendant, "in establishing its prima facie entitlement to judgment as a matter of law, was 'not required to negate the possible applicability of [the launch an instrument of harm] exception[ ]' " (*Brathwaite*, 92 AD3d at 824). Rather, it was plaintiff's burden to raise a material issue of fact as to the applicability of the exception, which he failed to do.

In any event, defendant's submissions establish that each time water infiltrated plaintiff's unit, the source was traced to the bathroom of defendant Ferrara-Ruurds's unit—not a common element of the building—for which Ferrara-Ruurds was ultimately responsible. Defendant's submissions also demonstrated that the cause of all the leaks was not the same and

that each time a repair was performed the leak did not recur immediately.

In particular, plaintiff alleged in the complaint and bill of particulars and testified at his deposition that the first leak occurred in March 2010, and lasted a few days. The next leaks occurred in May 2010, August 2010, December 2010, and finally in August 2011, when water began "cascading" into plaintiff's unit. In response to plaintiff's complaints, defendant attempted to fix the leaks as they occurred, as evidenced by invoices dated March 10, April 13, September 28, and December 30, 2010.

The invoice for the March 2010 service call stated that the plumber "[r]eset water closet, and tested." The invoice for the April 2010 service call stated that the plumber "[p]erformed sewer and drain cleaning to clear stoppage." The invoice for the September 2010 service call stated that the plumber "[s]upplied and installed new diverter spout. Also installed new sections of branch piping using all new 1/2" brass and copper pipe, fittings, and material as required. Tested all work." The invoice for the December 2010 service call indicated that the plumber "found toilet leaking at wall and tub overflow plate leaking at plate." The plumber removed the toilet, installing "a new wax and felt gasket" and the overflow plate, caulking the area. Both repairs were tested, and no leaks were detected.

Defendant's submissions also demonstrate that in July 2010, Ferrara-Ruurds hired third-party defendant, Curaj Painting & Interiors, Inc., to install a new toilet and sink in her bathroom. The December 2010 invoice of defendant's plumber indicated that the toilet was the source of the December 2010 leak. Plaintiff also submitted the deposition testimony of Nazim Curovic, who testified that the cause of the next and final leak, in August 2011, which caused the most extensive damage, was rotting sheetrock on the wall of the shower.

In opposition, plaintiff failed to offer any expert opinion or other evidence demonstrating that the work of defendant's plumbers caused or worsened any condition in the Ferrara-Ruurds unit that led to water infiltrating his apartment, including the leaking toilet or rotting sheetrock. At best, plaintiff contends that defendant was negligent in failing to timely investigate and remedy the cause of the leaks from Ferrara-Ruurds's bathroom, which does not rise to the level of launching an instrument of harm (*see Medinas v MILT Holdings LLC*, 131 AD3d 121, 126 [1st Dept 2015] ["even accepting for purposes of this analysis that The Elevator Man negligently inspected the elevator on January 14, 2010 and negligently failed to correctly assess the condition of the elevator and

necessary repair on May 26, 2010, it cannot be said to have launched a force or instrument of harm. That is, in failing to correctly inspect or repair the elevator, it did not create or exacerbate an unsafe condition"]). Accordingly, I would grant defendant's motion for summary judgment dismissing the negligence claim as against it.