Demetro v Dormitory Auth. of the State of N.Y. (2019 NY Slip Op 01642)





Demetro v Dormitory Auth. of the State of N.Y.


2019 NY Slip Op 01642


Decided on March 7, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 7, 2019

Friedman, J.P., Sweeny, Kapnick, Gesmer, Singh, JJ.


7241 16277/06 86001/07 83793/09 83990/10

[*1]Louis Demetro, et al., Plaintiffs-Respondents,
v
Dormitory Authority of the State of New York, et al., Defendants-Respondents, The Cannon Corporation doing business as Cannon Design, Defendant-Appellant, L.P. Gans Sales Company, Inc., et al., Defendants. [And Third-Party Actions]


Donovan Hatem LLP, New York (Scott K. Winikow of counsel), for appellant.
The Noll Law Firm, P.C., Syosset (Beth S. Gereg of counsel), for Louis Demetro and Nancy Demetro, respondents.
Perry, Van Etten, Rozanski & Primavera, LLP, New York (Kenneth J. Kutner of counsel), for Dormitory Authority of the State of New York, Bovis Lend Lease LMB Inc. and Center Sheet Metal, respondents.
Goldberg Segalla, LLP, White Plains (Jill C. Owens of counsel), for Martin Associates, Inc., respondent.
London Fischer LLP, New York (Brian A. Kalman of counsel), for Metal-Fab, Inc., respondent.



Order, Supreme Court, Bronx County (Ben R. Barbato, J.), entered on or about March 22, 2017, which, insofar as appealed from, denied defendant Cannon Corporation's motion for summary judgment dismissing the complaint and all claims and cross claims against it, unanimously modified, on the law, to grant the motion as to the complaint insofar as it is based on the alleged improper sizing of the breeching system or an improper connection between the breeching system and the chimney stack, and as to any cross claims for contractual indemnification asserted by defendants Martin Associates, Center Sheet Metal, Inc., or Metal-Fab, Inc., and otherwise affirmed, without costs.
Plaintiff Louis Demetro seeks to recover for injuries he sustained at work in the boiler room of Jacobi Medical Center when an angle iron that had been affixed to the cover of a cleanout port in the breeching system of a new boiler system became dislodged and struck him on the head. It is undisputed that vibrations in the breeching system led both to the need for the covers of the cleanout ports to be reinforced with angle irons and to the angle irons coming loose.
Defendant Dormitory Authority of the State of New York (DASNY), the building owner, retained defendant Cannon as its architect to provide programming, architectural and engineering design, including a schematic design for the boiler plant, and production of construction documents. DASNY also retained defendant Martin Associates as the prime HVAC contractor. Cannon provided performance specifications for the breeching system to Martin, which designed [*2]the breeching system and selected the component parts. The selected components, including the cleanout ports, were then submitted to Cannon for review to determine whether they conformed with the design intent.
There is no evidence that defendant Cannon negligently sized the system to accommodate three boilers in operation so that it could be held liable for plaintiff's injuries (see Domenech v Associated Engrs., 257 AD2d 403 [1st Dept 1999]; see also Hussain v Try 3 Bldg. Servs., 308 AD2d 371, 372 [1st Dept 2003]; see generally Church v Callanan Indus., 99 NY2d 104, 111 [2002]). There is testimony in the record about the problems that can result from a breeching system that is too small, but no evidence that the subject breeching system was too small. Moreover, since there is no evidence that any defect in the breeching system, as opposed to a problem with the boiler burners, caused the aforementioned vibrations, there is no support for a finding that any deficiency in the connection between the breeching system and the chimney stack was the proximate cause of the vibrations. Indeed, it is undisputed that the vibrations were resolved by a modification to the boiler burners.
However, there is a question as to whether Cannon was negligent in the performance of its architectural/engineering services, and whether any such negligence affirmatively created or contributed to the injury producing harm. Cannon had obligations to, inter alia, review "all shop drawings and samples" submitted to it "for adherence to the intent and requirements" of the contract and to visually inspect on a bi-weekly basis, or as required by DASNY, the work in progress for compliance with the contract drawings and specifications or shop drawings. Here, the record presents an issue of fact as to whether Cannon was negligent in approving or failing to detect problems with the manifold tee cleanout ports and their covers during its required bi-weekly inspections. Cannon's principal, Millard Berry, acknowledged that these were not proper ports or covers for the intended purpose, and that upon his February 2005 site visit he discovered that the covers used were not the covers included in Cannon's specifications.
Cannon argues that even if it was negligent, there could be no causal connection between any negligence on its part and plaintiff's injury because Cannon never approved the angle iron bracing that struck plaintiff, or the makeshift cleanout port covers. Moreover, when Cannon realized that the makeshift cleanout port covers were not in accordance with its specifications and needed to be replaced, Cannon notified both DASNY and Martin; however, over the course of the eight months between Cannon's discovery and plaintiff's injury, DASNY and Martin failed to replace the makeshift covers and bracing system. Thus, according to Cannon, even if it was negligent in its review of the component list or in its inspections of the ongoing work, any such negligence was not a proximate cause of the accident, because the installation of angle irons, which it never approved, and the failure of DASNY and Martin to heed its remediation recommendation for eight months before the accident occurred were intervening superseding causes.
"When a question of proximate cause involves an intervening act, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence'" (Hain v Jamison, 28 NY3d 524, 529 [2016], quoting Mazella v Beals, 27 NY3d 694, 706 [2016]). "The mere fact that other persons share some responsibility for plaintiff's harm does not absolve defendant from liability because there may be more than one proximate cause of an injury'" (id.). Here, a jury could reasonably conclude that the effort to reinforce the cleanout port covers with angle irons was a normal and foreseeable consequence of the alleged inadequacy of the covers, which Cannon either approved or failed to detect, and which Cannon's principal acknowledged were not the proper covers. Thus, under the circumstances presented in this case, there remain triable issues of fact as to whether, inter alia, the use of the angle iron bracing, as well as DASNY and Martin's failure to replace the covers, despite notice from Cannon, constituted superseding causes of plaintiff's injuries (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315-316 [1980]).
Defendants Martin Associates, Center Sheet Metal, Inc., and Metal-Fab, Inc. do not dispute that there are no contractual provisions that require Cannon to indemnify them.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 7, 2019
CLERK