[880 NE2d 845, 850 NYS2d 359]

Brent F. Fung et al., Appellants, v Japan Airlines Company, Ltd., et al., Defendants, and Japan Airlines Management Corp., Respondent. (And Third-Party Actions.)

Brent F. Fung et al., Appellants, v Aero Snow Removal Corp., Respondent.

Argued November 14, 2007; decided December 13, 2007

**POINTS OF COUNSEL**

*Pollack, Pollack, Isaac & DeCicco,* New York City (*Brian J. Isaac* of counsel), and *Edelman, Krasin & Jaye, PLLC* (*Paul*

*Edelman* and *Lawrence Krasin* of counsel), for appellants. I. The action against Japan Airlines Management Corp. is not barred by the Workers' Compensation Law. (*Andre v Pomeroy,* 35 NY2d 361; *Cahill v Triborough Bridge & Tunnel Auth.,* 4 NY3d 35; *Giuffrida v Citibank Corp.,* 100 NY2d 72; *Alvarez v Prospect Hosp.,* 68 NY2d 320; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851; *Zuckerman v City of New York,* 49 NY2d 557; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Olan v Farrell Lines,* 64 NY2d 1092; *Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106; *Springsteen v Samson,* 32 NY 703.) II. There was evidence that Aero Snow Removal Corp. salted and sanded the parking lot and thereby made it more dangerous than it would otherwise have been. (*Hamilton v Beretta U.S.A. Corp.,* 96 NY2d 222; *Martin v Herzog,* 228 NY 164; *Eiseman v State of New York,* 70 NY2d 175; *Turcotte v Fell,* 68 NY2d 432; *Akins v Glens Falls City School Dist.,* 53 NY2d 325; *Palsgraf v Long Is. R.R. Co.,* 248 NY 339; *De Angelis v Lutheran Med. Ctr.,* 58 NY2d 1053; *Waters v New York City Hous. Auth.,* 69 NY2d 225; *Pulka v Edelman,* 40 NY2d 781; *Tobin v Grossman,* 24 NY2d 609.)

*Brown Gavalas & Fromm LLP,* New York City (*David H. Fromm, Robert J. Brown* and *Fred G. Wexler* of counsel), for Aero Snow Removal Corp., respondent. Aero Snow Removal Corp. owed no legal duty to plaintiffs. (*Smelley v Ahmed,* 3 AD3d 559; *Castro v Maple Run Condominium Assn.,* 41 AD3d 412; *Zuckerman v City of New York,* 49 NY2d 557; *Nicholas v EPO-Harvey Apts., Ltd. Partnership,* 31 AD3d 1174; *Rector v City of New York,* 259 AD2d 319; *Pinn v Baker's Variety,* 32 AD3d 463; *Yaeger v UCC Constructors,* 281 AD2d 990; *Forester v Golub Corp.,* 267 AD2d 526; *Otonoga v City of New York,* 234 AD2d 592; *Bugiada v Iko,* 274 AD2d 368.)

*Polin, Prisco & Villafane,* Glen Cove (*Andrew D. Polin* of counsel), for Japan Airlines Management Corp., respondent. I. The Appellate Division correctly determined that since Japan Airlines Management Corp. was serving as the Port Authority's agent when the accident occurred, plaintiffs' claims against it are barred by the exclusivity provisions of the Workers' Compensation Law. (*Martin v Peyton,* 246 NY 213; *South Rd. Assoc., LLC v International Bus. Machs. Corp.,* 3 NY3d 689; *Matter of Cromwell Towers Redevelopment Co. v City of Yonkers,* 41 NY2d 1; *Corhill Corp. v S.D. Plants, Inc.,* 9 NY2d 595; *Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42; *Fleischman v Furgueson,* 223 NY 235; *Shah v Lokhandwala,* 265 AD2d 396; *Matter of*

*Gallagher v Houlihan Lawrence Real Estate,* 259 AD2d 853; *Matter of G. Fried Westbury, Inc. [Sweeney],* 239 AD2d 677; *Seudath v Mott,* 202 AD2d 658.) II. The order appealed from should be affirmed because Japan Airlines Management Corp. did not have actual knowledge of the ice patch alleged by plaintiffs and there is no basis on which to impute to it constructive notice of that condition. (*Putnam v Stout,* 38 NY2d 607; *Gordon v American Museum of Natural History,* 67 NY2d 836; *Doherty v Great Atl. & Pac. Tea Co.,* 265 AD2d 447; *Simmons v Metropolitan Life Ins. Co.,* 84 NY2d 972; *Golonka v Saratoga Teen & Recreation of Saratoga Springs,* 249 AD2d 854; *Robinson v Trade Link Am.,* 39 AD3d 616; *Stoddard v G.E. Plastics Corp.,* 11 AD3d 862; *Arcuri v Vitolo,* 196 AD2d 519; *Sellet v United Artists Theaters,* 251 AD2d 488; *Gordon v American Museum of Natural History,* 67 NY2d 836.) III. There is no merit to plaintiffs' claim against Japan Airlines Management Corp. regarding improper illumination of the Port Authority's parking area. (*Orr v Spring,* 288 AD2d 663; *Bernstein v Starrett City,* 303 AD2d 530.)

**OPINION OF THE COURT**

JONES, J.

In this consolidated negligence action, we are required to consider the relationship between the exclusive remedy provisions of Workers' Compensation Law §§ 11 and 29 (6), and principles of agency. Specifically, we are asked whether Japan Airlines Management Corp. (JAMC), as the Port Authority of New York and New Jersey's (Port Authority) putative managing agent, may benefit from the exclusive remedy defense in an action by plaintiff Brent Fung, a Port Authority employee, against JAMC. In a related action, Fung seeks to recover damages against Aero Snow Removal Corp. arising out of the same alleged injuries.

## I. Facts and Procedural History

Plaintiff Brent Fung is employed by the Port Authority as an electrician. Plaintiff claims that at approximately 6:00 A.M. on January 22, 2001, he slipped and fell on a patch of ice shortly after arriving in the parking lot of Building 14 at John F. Kennedy International Airport and that he sustained back injuries requiring surgery, for which he began collecting workers' compensation payments a year later. The Port Authority owned the Building 14 premises, which it leased to JAMC. JAMC simultaneously subleased 70% of the premises—which encom-

passes the subject parking lot—back to the Port Authority. The lease/sublease declared that "[t]his Agreement does not constitute [JAMC] as the agent or representative of the Port Authority for any purpose whatsoever," and that "[n]either a partnership nor any joint [ ]venture" is created. This statement of the parties' relationship is repeated elsewhere in the lease.

The lease obligated JAMC to contract with other entities for snow removal and electrical lighting work for the entire premises, among other maintenance responsibilities. Pursuant to the lease, JAMC contracted with Aero to commence "push and pile" snow removal operations when one inch of snow accumulated. Further, Aero would provide "ice/snow control" services—such as salting or sanding—at JAMC's request. Finally, the contract provided that JAMC was to release Aero upon the satisfactory completion of the snow removal. The Port Authority and JAMC share maintenance expenses on a 70%/30% basis.

In 2002, Fung, and his wife suing derivatively (plaintiffs), commenced a negligence action against JAMC, among others (Action No. 1). JAMC subsequently commenced a third-party action against Aero and a fourth-party action against the Port Authority, each for common-law and contractual indemnification. Plaintiffs thereafter commenced a separate negligence action against Aero (Action No. 2). At his examination before trial, Fung testified that he did not notice any snow on top of or near the ice patch after he fell, nor did he know for how long the ice patch existed. Moreover, Fung testified that he had complained to his supervisor about poor or inadequate lighting in the parking lot.

JAMC's representatives also testified. Rudolph Auslander, JAMC's president, indicated that he signed the snow removal contract with Aero on behalf of JAMC as "the agent for [the] Port Authority." JAMC's signature line on its contract with Aero says that JAMC acted "As Agents [sic] for the Port Authority." Sameer Sikander, a facilities manager at JAMC, testified as to the snowstorm that occurred during the two days preceding Fung's accident, January 20 and 21, 2001. Relying on his "snow logs" created during the storm, Sikander testified that salting of the Building 14 parking lot occurred between 10:30 P.M. on January 20 and 1:30 A.M. on January 21, but that subsequent salting may have taken place. He further testified that heavy snow fell in the early morning hours of January 21 and that snow clearing operations began around 3:00 A.M. and continued into the afternoon. Further, Aero's operations manager, Joseph

Boccio, testified that the JAMC/Aero contract did not require Aero to affirmatively salt or sand any area; that, based on Aero's records, all of Aero's work concerning the snow storm in question occurred on January 21, between 12:30 A.M. and 3:15 P.M., a day before Fung's accident; and that Aero did not sand or salt the parking lot on January 21.

Following discovery, JAMC moved for summary judgment dismissing the complaint and all cross claims asserted against it. JAMC argued that, as the Port Authority's agent responsible for maintenance of the parking lot and lighting fixtures, it was immune from liability under the exclusive remedy provisions of the Workers' Compensation Law. Additionally, JAMC argued that, in any event, it did not have actual or constructive notice of the alleged ice patch or of the parking lot's allegedly poor lighting.

Aero subsequently moved for summary judgment dismissing JAMC's third-party complaint against it in Action No. 1 and separately moved for summary judgment dismissing plaintiffs' complaint in Action No. 2. Further, the Port Authority moved for summary judgment dismissing JAMC's fourth-party complaint against it in Action No. 1, and JAMC cross-moved for the same relief on the second and third causes of action for contractual indemnification, apparently abandoning its common-law indemnification claim.

Supreme Court denied JAMC's and Aero's motions to dismiss plaintiffs' claims, and Aero's motion to dismiss JAMC's third-party complaint. Further, the court granted the Port Authority's motion to the extent of dismissing JAMC's common-law indemnification claim in the fourth-party complaint in Action No. 1, but denied its motion, and JAMC's cross motion, as to the contractual indemnification claim, noting that questions of fact existed as to JAMC's liability in the underlying personal injury action. The court rejected JAMC's exclusive remedy defense because JAMC and Fung's employer, the Port Authority, "are separate legal entities" with "separate income tax returns, separate budgets, and separate day-to day control" even though they may have "some financial interrelation" (2005 NY Slip Op 30132[U], *4).

JAMC appealed from so much of Supreme Court's order as denied its motion for summary judgment dismissing the complaint in Action No. 1 and denied its cross motion for summary judgment on the contractual indemnification claim in its

fourth-party complaint against the Port Authority. Aero cross-appealed from so much of Supreme Court's order as denied its motions for summary judgment dismissing JAMC's and plaintiffs' complaints against it.

The Appellate Division reversed Supreme Court's order, insofar as appealed from, granted JAMC's motion and dismissed the complaint and all cross claims asserted against it in Action No. 1, granted Aero's motion and dismissed the third-party complaint in Action No. 1 and the complaint in Action No. 2, and "severed" Action No. 1 "against the remaining defendants"* (*Fung v Japan Airlines Co., Ltd.*, 31 AD3d 707, 707-708 [2d Dept 2006]). As to the injured plaintiff's underlying action against JAMC, the court relied on *Seudath v Mott* (202 AD2d 658 [2d Dept 1994], *lv dismissed* 85 NY2d 890 [1995]) and determined that because JAMC "was serving as the Port Authority's managing agent when the accident occurred, the plaintiffs' claims against [JAMC] are barred pursuant to the exclusivity provisions of Workers' Compensation Law § 29" (*id.* at 708).

As to Aero in Action No. 2, the court concluded that plaintiffs failed to raise a triable issue of fact in response to Aero's demonstrated entitlement to judgment as a matter of law. The court determined that the parties' remaining contentions were either rendered academic or were without merit. This Court granted plaintiffs' motion for leave to appeal.

## II. Discussion

### A. Action No. 1: Fung v Japan Airlines Company, Ltd., et al.

Workers' Compensation Law §§ 11 and 29 (6) restrict an employee from suing his or her employer or coemployee for an accidental injury sustained in the course of employment. However, the workers' compensation remedy is generally not exclusive if the employee is injured by a third person (*see* Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 29, at 196). Central to the issue

---

* In dismissing plaintiffs' claims against JAMC in Action No. 1, the Appellate Division neither considered on the merits, nor expressly dismissed, JAMC's fourth-party contractual indemnification claims against the Port Authority. Accordingly, on remittal the Appellate Division must consider JAMC's action against the Port Authority in light of our holding. Although in its purported severance the Appellate Division order suggests that actions against defendants other than the Port Authority remained pending, the actions against all other defendants originally named in plaintiffs' complaint had been dismissed in earlier proceedings at Supreme Court.

before us is whether JAMC was Fung's employer entitled to claim exclusivity.

Plaintiffs argue that in finding that JAMC acted as the Port Authority's managing agent, the Appellate Division disregarded the clear statement of intent in the JAMC/Port Authority lease; that, in any event, the court misapplied the exclusivity defense to bar their action against JAMC because even if JAMC may be considered the Port Authority's agent, JAMC was neither "in the same employ" as Fung, a Port Authority employee (*see* § 29 [6]), nor Fung's employer within the meaning of Workers' Compensation Law § 11. JAMC, in turn, contends that it was effectively the Port Authority's agent, noting that the JAMC/Aero contract states that JAMC "represents that all charges under this Agreement are incurred by [JAMC] *as agent* for the Port Authority" and that it signed the contract *"As Agents* for the Port Authority" (emphasis added).

Initially, we note that whether or not JAMC actually served as the Port Authority's managing agent, on this record its defense must fail as a matter of law (*see Thompson v Grumman Aerospace Corp.*, 78 NY2d 553, 557 [1991]). The Appellate Division here relied on its decision in *Seudath*, concluding that JAMC is entitled to the exclusive remedy defense simply because it is the Port Authority's managing agent. We do not read *Seudath* as supporting this conclusion and, in any event, the purported managing agency status in the present case does not establish a relationship between JAMC and Fung that would allow JAMC to assert the Workers' Compensation Law defense. In *Seudath*, plaintiff was the superintendent of a building co-owned by a married couple. Plaintiff received workers' compensation payments and then sued the building's co-owner, a managing agent and a company that "manage[d] the premises" (202 AD2d at 658). Critically, the defendants were deemed to have " 'operated', 'maintained', and 'controlled' the premises" and were thus held to be either plaintiff's "coemployees or special employers" (*id.* at 659). This conclusion necessarily implies that the defendants had some cognizable working relationship with the plaintiff or his employer that rendered them either the plaintiff's employer or coemployee for Workers' Compensation Law purposes.

The exclusive remedy doctrine has been previously extended to persons or entities other than the injured plaintiff's direct employer (*see e.g. Thompson*, 78 NY2d 553 [1991] [special employers]; *Ugijanin v 2 W. 45th St. Joint Venture*, 43 AD3d

911 [2d Dept 2007] [same]; *Alvarez v Cunningham Assoc., L.P.*, 21 AD3d 517 [2d Dept 2005] [same]; *Kramps v Goldbetter*, 292 AD2d 571 [2d Dept 2002] [employer in alter ego context]; *Gonzalez v Lovett Assoc.*, 228 AD2d 342 [1st Dept 1996] [special employer in managing agency context]; *Reynoso v Kensington Mgt. Servs.*, 181 AD2d 415, 415 [1st Dept 1992] [same]; *Felder v Old Falls Sanitation Co.*, 47 AD2d 977 [3d Dept 1975], *affd* 39 NY2d 855 [1976] [employer in joint venture context]; *Fallone v Misericordia Hosp.*, 23 AD2d 222 [1st Dept 1965], *affd* 17 NY2d 648 [1966] [same]) or coemployee (*see e.g. Hanford v Plaza Packaging Corp.*, 2 NY3d 348, 350 [2004]; *Macchirole v Giamboi*, 97 NY2d 147 [2001]; *Sojka v Romeo*, 293 AD2d 522 [2d Dept 2002]).

Essential to all of these decisions is a working relationship with the injured plaintiff sufficient in kind and degree so that the third party, or the third party's employer, may be deemed plaintiff's employer. In *Thompson*, for example, we reaffirmed the principle that an employee "of one employer may also be in the special employ of another" when certain factors exist (78 NY2d at 557). A special employee is "one who is transferred for a limited time of whatever duration to the service of another," and limited liability inures to the benefit of both the general and special employer (*id.*; *see also Schramm v Cold Spring Harbor Lab.*, 17 AD3d 661, 662 [2d Dept 2005]). Although no one factor is determinative, a "significant" and "weighty feature" in deciding whether a special employment relationship exists is "who controls and directs the manner, details and ultimate result of the employee's work"—in other words, who determines "all essential, locational and commonly recognizable components of the [employee's] work relationship" (78 NY2d at 558; *see also Ugijanin*, 43 AD3d at 913 [discussing "(p)rincipal factors in determining the existence of a special employment relationship," including control, direction and supervision, payment of wages and furnishing of equipment, hiring and discharging, among others]). Thus, we have always looked to the underlying facts of the parties' relationship, and the same considerations govern a section 11 claim to immunity in other contexts, regardless of title.

Similarly, in *Macchirole*, we reiterated the basic principles for assessing an immunity defense under section 29 (6). "Parties are coemployees in 'all matters arising from and connected with their employment'" (97 NY2d at 150, quoting *Heritage v Van Patten*, 59 NY2d 1017, 1019 [1983]). Among other limitations

not relevant here, the parties must have been "acting within the scope of their employment, as coemployees, at the time of injury" (*id.*; *see also Hanford*, 2 NY3d at 350).

Thus, it is not the title of the purported "employer"—in this case, a putative managing agent—that controls, but rather the actual working relationship between that party and the purported "employee." Here, JAMC argues agency but stops conspicuously short of explaining its working relationship with Fung or his employer. The title alone, however, does not suffice (*see Thompson*, 78 NY2d at 557; *Bynog v Cipriani Group*, 1 NY3d 193, 200 [2003]; *Macchirole*, 97 NY2d at 150; *see also Smith v Delta Intl. Mach. Corp.*, 2007 WL 1540958, *5, 2007 US Dist LEXIS 38373, *16 [ED NY 2007] ["regardless of the (managing agency) title, the entity must demonstrate that it controlled and directed the manner, details and ultimate result of the employee's work"]; *Dashnau v Coulston Found.*, 1997 WL 305255, *3, 1997 US Dist LEXIS 7602, *8 [SD NY 1997] [noting that managing agency status "begs the question of the actual 'degree of control exercised over the employee' and, more importantly, whether the (agent) enjoyed 'exclusive daily control over the direction and manner' of (the employee's) work"]).

If, on the other hand, JAMC argues by implication, as it appears to do, that it had a working relationship with Fung or the Port Authority sufficient to be deemed his special employer, no record evidence exists to support that conclusion. Instead, the record reflects that the Port Authority directed, supervised and controlled all aspects of Fung's employment as an electrician. As plaintiffs argued, "there has been no evidence that [JAMC] had any contact with plaintiff at all." Moreover, JAMC does not seriously argue that it is Fung's coemployee (*see* Workers' Compensation Law § 29 [6]). We thus conclude, as did Supreme Court, that the Port Authority and JAMC are separate legal entities with separate day-to-day control over their respective employees' work. Accordingly, neither section 11 nor section 29 (6) serves to bar plaintiffs' action against JAMC.

B. Action No. 2: Fung v Aero Snow Removal Corp.

In their direct action against Aero, plaintiffs concede that the JAMC/Aero contract to provide snow removal services does not, standing alone, trigger a duty of care running to them. They argue, nevertheless, that Aero's failure to salt or sand the area of snow it plowed left open the possibility that the mounds of snow may have melted and refrozen, or that its plowing left a

thin sheet of snow, thus creating or exacerbating a dangerous condition. This argument is without merit.

We have recognized three exceptions to the general rule that a "breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to noncontracting third parties upon the promisor" (*Church v Callanan Indus.*, 99 NY2d 104, 111 [2002]). While plaintiffs urge the exception based on negligent performance of a service required under a contract, we have previously rejected a similar argument in *Espinal v Melville Snow Contrs.* (98 NY2d 136 [2002]). As we noted in *Espinal*, by merely plowing the snow, as required by the contract, defendant's actions could not be said "to have created or exacerbated a dangerous condition" (*id.* at 142). Here, as in *Espinal*, plaintiffs point to no term of the JAMC/Aero contract that required Aero to salt or sand the parking lot absent JAMC's request to do so, nor to record evidence that such a request was made. Therefore, because Aero owed no duty of care to Fung, plaintiffs' claim against Aero must fail.

Accordingly, the Appellate Division order should be modified, with costs to plaintiffs against Japan Airlines Management Corp., by remitting to the Second Department for consideration of issues raised but not determined on the appeal to that court that pertain to plaintiffs and Japan Airlines Management Corp. and, as so modified, affirmed, with costs to Aero Snow Removal Corp. against plaintiffs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order modified, etc.