OPINION OF THE COURT
David A. Weinstein, J.
This action was commenced by a claim filed on October 14, 2011, in which claimant Mercedes Crespo alleged that at or about 5:30 p.m. on September 6, 2011, she tripped and fell in a hole due to defective pavement in the area behind 94 Amity Street in Brooklyn, New York. The claim alleges that the defect was the result of negligence by the State University of New York (SUNY) and Downstate at LICH Holding Company, whom she named as defendants. Since the only proper defendant in this action is the State of New York (see Court of Claims Act § 9; NY Const, art VI, § 9), I will refer below to a single “defendant” in this action, or to “the State,” and the caption is amended accordingly.
By decision and order dated May 23, 2012,1 granted a motion by defendant to amend its answer to add the following affirmative defense: “Claimant allegedly injured during the course of her employment, has her remedy under the Worker’s [sic] Compensation Law.” Claimant has filed her note of issue, and defendant now moves for summary judgment on the ground that the claim is barred by the exclusive remedy provisions of the Workers’ Compensation Law.
Defendant’s submission indicates the following: Crespo worked for Long Island College Hospital (LICH) until 2011 (motion exhibit L [Crespo deposition] at 8-9). In May 2011, LICH was acquired by SUNY, as provided for by an asset purchase agreement (APA) between LICH, SUNY and various other entities (motion exhibit G). According to defendant’s motion papers, the status of those previously employed by LICH was governed at the time of the accident by the terms of a professional employer agreement (PEA) entered into by SUNY and Staffco *809 of Brooklyn, LLC (Staffco)[1] (motion exhibit H). Defendant supports its motion-in-chief with various documents, including the APA and PEA, and the deposition testimony of Crespo, security guard and Staffco employee Gregory Frame, and director of facilities management and development (also employed by Staffco) Eamon Quirke.
The PEA recites that Staffco is registered in New York State as a professional employer organization (PEO). A PEO is an entity to which the “client” outsources its payroll and human resource responsibilities, including payment of wages and employment taxes as well as other employment-related matters (see Tri-State Empl. Servs. v Mountbatten Sur. Co., 99 NY2d 476, 481 [2003]). In 2002, New York enacted chapter 565 of the Laws of 2002, the Professional Employer Act, codified in article 31 of the Labor Law. This statute governs the legal status of PEOs and their employees.
Of particular note here, article 31 provides as follows in regard to workers’ compensation:
“Both the client and the professional employer organization shall be considered the employer for the purpose of coverage under the workers’ compensation law and both the professional employer organization and its client shall be entitled to protection of the exclusive remedy provision of the workers’ compensation law irrespective of which entity secures and provides such workers’ compensation coverage” (Labor Law § 922 [4]).
In a nutshell, defendant argues that under article 31, as well as the PEA, SUNY and Staffco were claimant’s co-employers for purposes of workers’ compensation, and claimant’s remedy for injuries suffered in the course of her employment is therefore through the workers’ compensation system, not in tort.
Defendant cites two provisions of the PEA in particular in support of its argument. First, it cites paragraph 5 (c) of the PEA, which provides in relevant part:
“StaffCo agrees to secure and provide required workers’ compensation and disability coverage for the StaffCo Employees, naming SUNY as an additional insured, it being understood that both SUNY and StaffCo shall be (i) considered the *810 employer of the StaffCo Employees for the purpose of coverage under the workers’ compensation law, and (ii) entitled to protection of the exclusive remedy provision of the workers’ compensation law.” (PEA at 4; see also id. 1i 24 [a] [Staffco employees are independent contractors and not employees of SUNY “(e)xcept for purposes of coverage under the workers’ compensation law”].)
Defendant submits a certificate of workers’ compensation insurance coverage, initially listing the insured as Staffco, and the “entity requesting proof of coverage” as SUNY Downstate Medical Center (motion exhibit I). The same document later names the insured as “Staffco of Brooklyn LLC L/C/F State University of New York Acting through it’s [sic] Health Sciences Center at Brooklyn” (id.).[2]
Defendant also points to paragraph 6 (a) of the PEA, which provides in relevant part:
“(a) Direction and Control Subject to the terms hereof and StaffCo’s compliance with law and applicable state policies, StaffCo shall possess the right to hire, evaluate, promote, terminate, discipline, direct and control the StaffCo employees, provided that StaffCo shall . . . direct such StaffCo employees to perform the Employee Services consistent with applicable law and the Agreement, which include the obligation duty [sic] to perform services as required to meet the needs of the Facilities to which they are assigned. Notwithstanding the foregoing or any other provisions of this Agreement, SUNY shall maintain such discretion and control over the StaffCo Employees as is necessary for SUNY to conduct its fiduciary duties, and comply with any applicable licensing, registration and certification requirements. This means (a) that SUNY shall retain ultimate decision and oversight of patient care activities and health care delivery services conducted by StaffCo employees; and (b) that SUNY shall retain sufficient direction and control over non-patient care activities conducted by StaffCo *811 Employees so as to comply with any applicable legal or regulatory requirements.” (PEA at 4.)
Defendant contends that these provisions demonstrate that Staffco and SUNY are co-employers as regards workers’ compensation under article 31.
Finally, defendant submits a copy of Crespo’s application for workers’ compensation benefits dated October 28, 2011 for injuries suffered in the accident at issue, as well as a letter from workers’ compensation carrier Zurich American Ins. Co., LLC, which lists its lien amounts (apparently the amount paid for Crespo’s medical and indemnity benefits) at over $17,000 (motion exhibits J-K).
In her opposition, claimant maintains that the above contractual language demonstrates that it is Staffco that directs and controls the performance of its employees (including Crespo), and thus is their true employer. In support of this contention, claimant submits her own affidavit, which avers that she is employed by Staffco, not by SUNY (Crespo off II2). Specifically, she states that Staffco issues her paycheck, and her “day to day dealings do not involve any contact with anyone associated with SUNY” (id.). Her job directing staff credentialing does not, she maintains, involve delivery of any health care services, a function exclusively within the purview of SUNY (id. 1Í 3). She acknowledges that she “periodically report[ed]” to Dr. David Wlody (a SUNY employee), but only “infrequent[ly],” and states that Wlody did not supervise her “daily activities” or have input into them (id. 1ÍH 4-5). In her deposition, she identified Wlody as the interim chief medical officer and chair of the department of anesthesiology at LICH, and in response to a question as to whether she had a “boss or a supervisor,” stated: “[y]es, I report directly to David Wlody” (Crespo deposition at 12).
Claimant also argues that the State has failed to establish that the transaction by which LICH sold its assets to SUNY via the APA actually occurred, or that the PEA ever went into effect or “has any bearing upon the Claimant’s employment” (Langsam off 1Í 2 [b]-[c]). In particular, she asserts that defendant merely included copies of these agreements in its motion papers, without submitting any testimony to authenticate them.
In a reply submission, the State presents the affidavit of Maureen Crystal, director of contracts for SUNY Downstate Medical Center. Crystal attests that she reviewed the APA and PEA, and that they are both “true and correct copies of original executed state contracts between LICH and SUNY Downstate.” Further, *812 she states that both agreements became effective on May 29, 2011, and that SUNY Downstate makes the payments required thereunder.
Discussion
To prevail on its motion for summary judgment, the State must make a prima facie showing of its entitlement to that relief by tendering sufficient evidence to demonstrate the absence of any material issue of fact (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). Once this showing has been made, the burden then shifts to claimant to produce evidentiary proof in admissible form sufficient to establish the existence of a material issue of fact, which requires a trial of the action (see Zuckerman, 49 NY2d at 562).
Defendant’s motion is premised on the exclusive remedy provisions of the Workers’ Compensation Law, set forth in sections 11 and 29 thereof. The former provides in relevant part that “[t]he liability of an employer [under the Workers’ Compensation Law] shall be exclusive and in place of any other liability whatsoever, to such employee, ... at common law or otherwise, on account of such injury or death or liability arising therefrom” (Workers’ Compensation Law § 11). Stated otherwise, the right to workers’ compensation benefits from an employer is “the exclusive remedy to an employee” (Workers’ Compensation Law § 29 [6]).
While these provisions bar an employee from suing his or her employer in tort, they generally do not restrict the employee’s right to recover from a third person who causes him or her injury (see Fung v Japan Airlines Co., Ltd., 9 NY3d 351, 357 [2007]). Nonetheless, there are circumstances in which the exclusive remedy doctrine has been extended to entities other than an individual’s direct employer. In particular, when a defendant has a supervisory relationship over the injured party “sufficient in kind and degree” that the third party “may be deemed plaintiff’s employer,” under the so-called “special employer” doctrine, the injured party may not seek damages by lawsuit against that entity (id. at 359).
In this instance, defendant’s contention that SUNY may not be held liable for claimant’s injuries is premised on the terms of the New York Professional Employer Act. As noted above, that statute provides that when an entity enters into a client rela *813 tionship with a PEO in accordance with article 31, both the PEO and client are covered by the exclusive remedy protections of the Workers’ Compensation Law. Indeed, Labor Law § 922 (4) states unequivocally that both a PEO and its client may not be sued by an employee for injuries occurring in the course of her employment. Thus, the motion boils down entirely to the question of whether article 31 appropriately governs this case.[3] If that statute applies here, the action is at an end.
Claimant challenges the State’s argument on two grounds. First, she asserts that the evidence for the PEO relationship, and in particular the PEA and APA, are not authenticated by a competent witness, nor is there evidence that they went into effect (see Langsam off 1i 2 [c]). But defendant has provided an affidavit by a SUNY employee with knowledge of the agreements that confirms that they are both authentic and in effect. Since the affidavit is relevant to arguments made in claimant’s submission, I may properly consider it although it was introduced for the first time in defendant’s reply filing (see Boone v City of New York, 92 AD3d 709, 710 [2d Dept 2012]; Ticor Tit. Guar. Co. v Bajraktari, 261 AD2d 156, 157 [1st Dept 1999]). Further, the contracts presented are signed by all relevant parties, as required for them to be effective. Finally, claimant’s own testimony that she became a Staffco employee in May 2011 (Crespo deposition at 8) cannot be squared with the argument that the agreements between SUNY and Staffco are not operational since it is those agreements that establish the latter’s role vis-a-vis former LICH employees. In light of these submissions, I find that defendant has shown — and claimant has failed to rebut — that the APA has been carried out, and the PEA is in force.
Second, claimant argues that defendant has not proved a PEO relationship between SUNY and Staffco, or if there was such a relationship, the State has not shown that it covers claimant.
A PEO is defined by Labor Law § 916 (4) to mean “any person whose business is entering into professional employer agreements with clients.” A professional employer agreement, by statute, must be in writing and include the following terms:
*814 “(a) [the PEO] expressly agrees to co-employ all or a majority of the employees providing services for the client;
“(b) The contract is intended to be on-going rather than temporary in nature;
“(c) Employer responsibilities for worksite employees,1[4]3 including those of hiring, firing and disciplining, are expressly allocated by and between the [PEO] and the client in the agreement; and “(d) The [PEO] expressly assumes the rights and responsibilities as required in section nine hundred twenty-two of this article.” (Labor Law § 916 [3].)
Labor Law § 922, referenced in the above requirements, provides that a PEO must have a written agreement with the client in which the PEO (i) “reserves a right of direction and control over the worksite employees,” provided the client maintains “such direction and control over the worksite employees as is necessary to conduct the client’s business”; (ii) “assumes responsibility” for payroll taxes and employee benefits; and (iii) “retains authority” to hire, fire and discipline workers (§ 922 [1] [a] [i], [ii], [iii]). Further, the PEO must give written notice of the “general nature” of the relationship to work site employees, and must “assume” responsibility for paying wages and unemployment insurance, and collecting taxes (§ 922 [1] [b]; [3]).
The terms of the PEA, on their face, comply with the requirements of article 31. SUNY and Staffco have entered into a written agreement (i.e., the PEA) in which they agreed to “co-employ” all Staffco employees (see PEA H 1), consisting of “all or substantially all” LICH nonmedical employees prior to the closing (id. at 1). The term of the agreement is five years, with a right of renewal for 10 five-year periods thereafter at SUNY’s request, which would seem to constitute an “ongoing” rather than “temporary” arrangement (cf. Labor Law § 916 [5] [excluding “temporary help firm(s),” from statute’s ambit, defined as those addressing “special work situations” including “employee absences, skill shortages, seasonal workloads (and) . . . special assignments”]). The agreement allocates responsibilities for hiring, firing and discipline, vesting ultimate responsibility in *815 Staffco but with certain requirements to consult and notify SUNY (PEA 1i 1). It also vests direction and control over employees in Staffco, while allowing SUNY to retain specified rights in regard thereto, including “ultimate direction and oversight” over patient care and “sufficient direction and control” over non-patient care “so as to comply with any applicable legal or regulatory requirements” (id. H 6 [a]). Finally, the PEA requires that Staffco notify its employees of the nature of their relationship, as required by statute (id. 1Í 6 [f|).
In light of the foregoing, defendant has demonstrated prima facie that SUNY and Staffco entered into a PEO relationship in accordance with article 31 (cf. McDougal v SUNY Downstate Med. Ctr., LICH, 2013 WL 1437616, *4, 2013 US Dist LEXIS 51087, *14-15 [ED NY, Apr. 9, 2013, No. 12-CIV-2018 (ILG) (MDG)] [“The relationship between StaffCo and SUNY is governed by the New York Professional Employer Act”]).[5] As to whether Crespo falls within the terms of that agreement, as noted the PEA provides that “all, or substantially all” LICH nonmedical employees prior to the closing will be employed by StaffCo “in accordance with the PEO Statute and the terms hereof [i.e., the terms of the PEA]” (PEA at 1). There is no dispute that Crespo, as the director of medical staff services responsible for verifying the credentials of medical staff, is not a medical employee (see Crespo deposition at 9-11). Since “StaffCo employees” are explicitly defined in the PEA to encompass all former LICH employees providing nonmedical services (PEA at 1), Crespo clearly falls within the ambit of that definition (see Crespo deposition at 8-9). Indeed, her argument on this motion is premised entirely on the claim that she is an employee of Staffco and not SUNY (see off in opp 11111-2). But given that the PEA provides for the co-employment of all Staffco employees by SUNY (PEA at 2), she cannot argue her affiliation with the one while denying any connection with the other.
As noted above, claimant also contends that SUNY did not have actual direction and control over Crespo’s day-to-day work. Even if I were to find her showing sufficient in this regard,[6] it would not rebut defendant’s prima facie case. The State’s *816 defense is not premised on SUNY’s de facto supervision of claimant, but rather on the PEO relationship between SUNY and Staffco, and the statutory provisions of article 31 that attach as a result thereof. That statute does not require that SUNY (as the “client”) maintain full direction and control over those employees subject to the PEA, but only that such responsibilities are “allocated” by agreement. Defendant’s submission shows that to be the case here.
Essentially, claimant argues that there is an issue of fact as to whether SUNY is not Crespo’s true “employer” for purposes of workers’ compensation. But the existence of an employment relationship between SUNY and Crespo does not turn on the nature of the supervision or direction she received; rather, the statute creates a co-employer relationship where a legally valid PEO agreement is in place, under which both the client and the PEO are granted by law the protection of the exclusive remedy provisions of the Workers’ Compensation Law (see L 2002, ch 565, § 1 [“Recognition of the employment relationship between a professional employer organization and worksite employees covered by a professional employer agreement shall be based on the statutory law to the extent provided in this act”]).
Finally, claimant’s attorney (although not claimant) states that “she was never told she was employed by anyone other than StaffCo” (Langsam off H 3). Even if this were competent evidence (see Zuckerman, 49 NY2d at 563 [attorney affirmations of no probative value on summary judgment motion]), and could be read to state that Staffco had failed to provide the requisite notice on the “general nature” of the relationship between Staffco and SUNY, I cannot find in the statute any indication that the mere failure to provide such notice to a particular employee, without more, divests the PEO agreement of any effect as to that employee.
Since defendant has made a prima facie case that a PEO relationship as defined by New York law exists between SUNY and Staffco, and since claimant has failed to rebut that showing, *817 claimant must seek her remedy for the September 6 fall through the workers’ compensation system.[7]
In light of the foregoing, defendant’s motion for summary judgment is granted, and the claim is dismissed.

. Some of the filings and quoted material herein make reference to “Staffco,” while others refer to “StaffCo.” For consistency’s sake, and unless in quoted material, the court shall reference “Staffco.”

. The term “L/C/F” is not defined in the record. The wording used here, though (i.e., PEO L/C/F client), is that provided for by the Workers’ Compensation Board in regard to PEO procurement of workers’ compensation coverage (see Workers’ Compensation Board, Leased Employees: Professional Employer Organization, http://www.wcb.ny.gov/content/main/onthejob/CoverageSituations/ leasedEmployees.jsp).

. Defendant only seeks dismissal on this ground, and claimant does not argue that — if SUNY is properly deemed her co-employer under article 31— there is some other disputed issue of material fact (such as whether her injury occurred in the course of her employment) which bars summary judgment here.

. A “worksite employee” is defined as “a person having an employment relationship with both the professional employer organization and the client” (Labor Law § 916 [6]).

. Claimant notes that the PEA has a “no third party beneficiaries” clause (Langsam off H 4). But defendant’s argument is not based on any such theory; rather the State argues that in light of the PEA, Staffco employees are governed by the workers’ compensation provisions of article 31.

. While Crespo attests to the absence of daily control by SUNY, she also acknowledges that she directly reported to Wlody, a SUNY official, not to an *816 other Staffco employee. Additionally, under the PEA SUNY retains “responsibility for the Staffco employees as is necessary for . . . compliance with any applicable licensing, registration or certification requirements” (PEA 111), which appears to include claimant’s job function of credentialing employees. In any case, whether SUNY or Staffco exercised greater direction or control is immaterial to the question at hand, i.e., whether the former is an employer as a matter of law under article 31.

. In her deposition, claimant stated that while she had filed a workers’ compensation claim, she had not yet received any award (Crespo deposition at 160). As noted, supra, however, defendant has now presented evidence that she has applied for and has now received benefits under the Workers’ Compensation Law, which claimant has not submitted evidence to rebut. The State’s submission is sufficient to demonstrate the necessary factual predicate to its exclusive remedy argument (see Baksh v Yassky, 195 AD2d 356, 357 [1st Dept 1993] [granting summary judgment to defendant on tort claim, where defendant submitted “documentary evidence” that claimant received workers’ compensation benefits under defendant’s policy, which plaintiff had failed to counter with admissible proof]).