Farrugia v 1440 Broadway Assoc. (2018 NY Slip Op 05222)





Farrugia v 1440 Broadway Assoc.


2018 NY Slip Op 05222


Decided on July 12, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 12, 2018

Manzanet-Daniels, J.P., Gische, Andrias, Kern, Singh, JJ.


4901 151857/12 590634/13

[*1]Anthony Farrugia, Plaintiff-Respondent,
v
1440 Broadway Associates, et al., Defendants-Respondents-Appellants, Harbour Mechanical Corp., Defendant-Appellant-Respondent, The Martin Group, LLC, et al., Defendants. 
[And a Third-Party Action]


Westerman Sheehy Keenan Samaan & Aydelott, LLP, Uniondale (Joanne Emily Bell of counsel), for appellant-respondent.
Pollack, Pollack, Isaac & De Cicco, LLP, New York (Jillian Rosen of counsel), for respondent.
London Fischer LLP, New York (Brian A. Kalman of counsel), for respondents-appellants.



Order, Supreme Court, New York County (Ellen M. Coin, J.), entered September 15, 2016, which, to the extent appealed from as limited by the briefs, denied defendant Harbour Mechanical Corp.'s motion for summary judgment dismissing the complaint and cross claims of defendants 1440 Broadway Associates, 1440 Broadway Owner, LLC and 1440 Broadway Mgt., LLC (collectively, the property owner), as against it, and denied the property owner's motion for summary judgment dismissing the complaint as against them, affirmed, without costs.
Plaintiff, an operating engineer, contends that while working in the pump room of the property owner's building, he was injured when he stepped into an exposed opening or hole in a metal plate [FN1] that caused him to fall. Harbour Mechanical was a contractor that the property owner retained to convert its building from a gas heating system to a Con Ed "clean steam station" (the conversion project). Plaintiff claims that Harbour, while working on the project, which included removal of an oil tank and other equipment, caused, created, exacerbated or "launche[d] a force or instrument of harm" when it removed the tank and left a large opening in the metal plate exposed (Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]). Plaintiff contends that the opening was not dangerous until the oil tank was removed because the opening had been beneath the equipment (see Miller v City of New York (100 AD3d 561 [1st Dept 2012]).
We find that Supreme Court correctly denied Harbour's motion for dismissal of the complaint and cross claims against it, as well as the property owner's motion for summary judgment dismissing the complaint. Defendants failed to demonstrate their entitlement to judgment as a matter of law (see Lopez v New York Life Ins. Co., 90 AD3d 446 [1st Dept 2011]). [*2]Moreover, there are issues of fact whether the exposed opening in the metal plate was open and obvious and not otherwise inherently dangerous (see generally Powers v 31 E 31 LLC, 123 AD3d 421 [1st Dept 2014]).
Plaintiff testified at his deposition that on the day of the accident he was working in the building's pump room, repairing a valve on equipment that was only three or four steps away from an exposed opening in a metal plate on the floor. While facing the equipment he was working on, plaintiff stepped back to reach for a tool. As he did so, he stepped into an exposed circular opening in the metal plate, causing him to fall backwards and strike his head on the concrete floor.
Plaintiff's claim against the property owner is that it failed to maintain its property in a reasonably safe condition because the opening was a dangerous condition of which it had notice, but failed to take remedial measures (see Basso v Miller, 40 NY2d 233, 241 [1976]). Plaintiff testified that when he first noticed the exposed opening, a few months before his accident, he took a picture of it with his cell phone and showed it to property owner's manager (Kohlbrecher). Kohlbrecher told plaintiff that he was busy at the moment, but that later he would take a look at the condition for himself.
Plaintiff's claim against Harbour is that when it removed the old fuel tank that was situated on the metal plate, Harbour launched a force or instrument of harm by creating a dangerous condition or making the condition less safe than it was before Harbour did its work. Harbour concedes that it removed a tank and other equipment during the conversion project and that the tank was to be serviced. It denies, however, that it made any structural changes to the metal plate or that the metal plate was inherently dangerous. Harbour maintains that the metal plate and any opening in it, once exposed, was open and obvious, particularly since plaintiff knew it was there and even took a photo of it.
Alternatively, Harbour argues it did not owe plaintiff, a noncontracting third party, a duty of care, and that even if it did expose an opening in the metal plate when it removed the oil tank, it cannot be held liable in negligence for merely doing the work it was contractually retained to do. Harbour denies that under the terms of its contract it had any contractual obligation to cover up, remediate or protect any opening it made when removing equipment from the pump room, and that the property owner and/or subcontractors were responsible for doing so. Harbour contends that it cannot be found to have caused or created a dangerous condition or have launched a force of harm because it did not make the exposed opening in the metal plate any less safe than it was before its removal of equipment from the pump room.
Although both defendants argue that the exposed opening in the metal plate was open, obvious, readily observable and known to plaintiff, a property owner has a nondelegable duty to maintain its premises in a reasonably safe condition, taking into account the forseeability of injury to others (Basso, 40 NY2d at 241). Moreover, although a defect or hazard may be discernable, this does not end the analysis, or compel a determination in favor of the property owner (Westbrook v WR Activities-Cabrera Mkts., 5 AD3d 69, 72 [1st Dept 2004]). Plaintiff's awareness of a dangerous condition does not negate a duty to warn of the hazard, but only goes to the issue of comparative negligence (Francis v 107-145 W. 135th St. Assoc., Ltd. Partnership, 70 AD3d 599, 600 [1st Dept 2010]). Given the exposed opening's proximity to equipment that required service, the circumstances of plaintiff's accident present an issue of fact of not only whether the condition was open and obvious, but also whether it was inherently dangerous (see Westbrook, 5 AD3d at 69, 71-73; Rubin v Port Auth. of N.Y. & N.J., 49 AD3d 422, 422 [1st Dept 2008]). Some hazards, although discernable, may be hazardous because of their nature and location (see Westbrook at 72). Defendants did not establish that the exposed opening - given its location in the floor near other mechanical equipment in the pump room - was not only open and obvious, but that there was no duty to warn, and that the condition was not inherently dangerous (see Cupo v Karfunkel, 1 AD3d 48, 51-52 [2d Dept 2003]).
A contractual obligation, standing alone, will not give rise to tort liability in favor of a noncontracting third party (Espinal 98 NY2d at 138]). One exception to this broad rule is where the contracting party, in failing to exercise reasonable care in the performance of his duties, "launche[s] a force or instrument of harm" (Espinal at 140). We depart from the dissent in [*3]finding that Harbour failed to make a prima facie showing that it did not owe plaintiff a duty of care and that it did not negligently cause, create or exacerbate a dangerous condition.
Even if Harbour's contract did not require that it cover, remediate, fill in or repair any of the floor openings resulting from its work, Harbour did not take even minimal corrective measures to protect the exposed opening in the floor after it removed the obsolete oil tank. Thus, while its removal of the tank was in fulfillment of its contractual obligation, a reasonable jury could find that Harbour's leaving an exposed and unprotected opening in the floor exposed, caused or created a dangerous condition even if previously the metal plate containing the opening was not unsafe. The dissent's view relies on cases where the defendant did not owe a duty of care because the condition the plaintiff complained of was precisely what was called for in the defendant's contract (Fung v Japan Airlines Co., Ltd., 9 NY3d 351 [2007]; Peluso v ERM, 63 AD3d 1025 [2d Dept 2009]; Miller v City of New York, 100 AD3d 561 [1st Dept 2012]; Agosto v 30th Place Holding, LLC, 73 AD3d 492, 492-493 [1st Dept 2010]). We take no issue with Harbour's argument, and the dissent's view, that Harbour was contractually obligated to remove the tank and that it fulfilled its contract by doing so. Our view, however, is that while the metal plate and its opening were under the tank, they were not a hazard because the tank prevented, or at least made it difficult, for anyone to step into that area. However, once the tank was removed, and the opening below it exposed, the metal plate and its opening were no longer protected. There is a view of the facts that Harbour, by leaving the exposed opening without any kind of warning or minimal protection, created or caused an unsafe condition, or made the previously obscured opening in the metal plate "less safe" than before Harbour did its work (see Timmins v Tishman Constr. Corp., 9 AD3d 62, 67 [1st Dept 2004], lv dismissed 4 NY3d 739 [2004]; cf. Santos v Daniello Carting Co., LLC, 148 AD3d 463, 464 [1st Dept 2017], lv denied 30 NY3d 903 [2017]). Thus the issue is not whether Harbour had a contractual obligation to protect the opening, but whether by leaving the opening in the metal plate exposed it created an unreasonable risk of harm to the plaintiff.
Harbour's motion for summary judgment dismissing the owner's cross claims against it was properly denied because the same issues of fact preclude summary dismissal of 1440 Broadway's cross claim as against Harbour for common-law indemnification and/or contribution (see Scuderi v Independence Community Bank Corp., 65 AD3d 928 [1st Dept 2009]. The operative indemnification provision is written in broad terms, providing, in relevant part, that "TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW," Harbour must "INDEMNIFY, PROTECT, DEFEND AND HOLD HARMLESS OWNER . . . FOR, FROM AND AGAINST ALL LIABILITIES . . . DIRECTLY OR INDIRECTLY ARISING OUT OF, CAUSED BY, OR RESULTING FROM (IN WHOLE OR IN PART), [1] THE WORK PERFORMED HEREUNDER . . . " by Harbour or any of its subcontractors. Such indemnification is triggered when the claim arises out of the contractor's work even though the subcontractor has not been negligent (see e.g. Brown v Two Exch. Plaza Partners, 76 NY2d 172 [1990]). Contrary to Harbour's argument, the indemnification provision does not run afoul of General Obligations Law § 5-322.1 because the limitation it contains ("TO THE FULLEST EXTENT PERMITTED BY LAW") obligates Harbour to only indemnify the owner to the extent that plaintiff's accident arose out of Harbour's and its contractor's work, except for that percentage of negligence attributable to the owner. Consequently, the owner will not be indemnified for its own negligence (see e.g. Brown v Two Exch. Plaza Partners, supra).
We have considered the parties' remaining arguments for affirmative relief and find them unavailing.
All concur except Andrias and Singh, JJ. who dissent in part in a memorandum by Andrias, J. as follows:




ANDRIAS, J. (dissenting in part)


I agree with the majority insofar as it affirms the denial of the 1440 Broadway defendants' motion for summary judgment dismissing the complaint as against them. However, I disagree with the majority insofar as it affirms the denial of defendant Harbour Mechanical's [*4]motion for summary judgment dismissing the complaint as against it and 1440 Broadway's cross claims for common-law indemnification and contribution. Harbour, an independent contractor, demonstrated prima facie that it owed no duty of care to plaintiff by submitting evidence that its contract with 1440 Broadway did not obligate it to cover or remediate any preexisting floor openings exposed by its work, and that 1440 Broadway, which owned the property and was aware of the openings, never requested that Harbour do so. In opposition, plaintiff and 1440 Broadway failed to raise a triable issue of fact as to whether Harbour failed to exercise reasonable care in the performance of its work and "launche[d] a force or instrument of harm" (Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]). Consequently, I dissent in part.
1440 Broadway hired Harbour as a general contractor for the installation of a new Con Ed steam station. Months after Harbour and its subcontractors had substantially completed their work, plaintiff, an operating engineer employed by the property manager, was changing a check valve on a pump in the building's subbasement. After installing the new valve, he turned to grab a tool and his foot allegedly went into an opening in a metal "diamond plate" in the floor that was a couple of feet from the pump, causing him to fall. While plaintiff claims that Harbour exposed the opening when it removed a tank that was covering it, there is conflicting testimony indicating that the opening was located in front of the tank and was already exposed.
Plaintiff had seen the opening, which he estimated was "two feet by two feet," and "maybe a foot deep," "once a couple of months before" his accident. At that time, he took a photograph of it with his cell phone and tried to show it to his supervisor, Wayne Kohlbrecher, who told him that he would take a look at the floor himself later. Although nothing obstructed plaintiff's view of the opening from where he was working, and the room was well lit for the most part, he did not see it on the date of his accident because he "was paying attention to the job and everything else going on in that room."
Generally, a contractual obligation standing alone will not give rise to tort liability in favor of a third party (see Espinal v Melville Snow Contrs., 98 NY2d at 140). As is relevant to this appeal, an exception applies where "the contracting party, in failing to exercise reasonable care in the performance of [its] duties, launche[s] a force or instrument of harm" by taking affirmative steps that create or exacerbate a dangerous condition (id.).
The majority finds that Harbour failed to make a prima facie showing that it did not owe plaintiff a duty of care under this Espinal exception. The majority posits that while Harbour was contractually obligated to remove the tank, a reasonable jury could find that Harbour's leaving an exposed and unprotected opening in the floor of the pump room, without any kind of warning, negligently created or exacerbated a dangerous condition because the tank had previously covered or "at least made it difficult" for anyone to step into that area, so that its removal made the area "less safe" than it was before.
However, "[i]n the absence of a contract for routine or systematic maintenance, an independent repairer/contractor has no duty to install safety devices or to inspect or warn of any purported defects" (Rappaport v DS & D Land Co., L.L.C., 127 AD3d 430, 431 [1st Dept 2015]). Where the creation of the allegedly dangerous condition is precisely what was called for in the contract, the contractor cannot be said to have created an unreasonable risk of harm to plaintiff (see Miller v City of New York, 100 AD3d 561 [1st Dept 2012]; see also Peluso v ERM, 63 AD3d 1025 [2nd Dept 2009] [Where a contractor fulfilled its contractual obligations in accordance with contract specifications and in the absence of evidence that it assumed a continuing duty to return to the premises after completing its work, it cannot be said to have affirmatively created a dangerous condition]).
Applying these principles, Harbour established prima facie that it did not owe plaintiff a duty of care through evidence that: (i) the opening in the metal plate predated its work and was there to allow for removal of the plate to service the piping for the old heating system and for maintenance for the trench beneath; (ii) the metal plate was not altered or damaged by Harbour in the course of its work; (iii) Harbour had no contractual obligation to remediate or repair any preexisting floor openings or metal plates that would become obsolete as a result of the change in the heating system; (iv) Harbour substantially completed its work by September or October 2011, months before plaintiff's accident in February, 2012, and was told to remove all of its equipment [*5]and that other parties would fill in obsolete floor penetrations; (v) two punch lists created by an engineering firm hired on behalf of 1440 Broadway did not list any open items relating to openings in the grate or floor and 1440 Broadway never made any complaints or contacted Harbour about the plate, the piping or the opening in the plate before plaintiff's accident; and (vi) 1440 Broadway retained a third party to remediate and cover all obsolete openings in the floor in a separate project after plaintiff's accident (see Fung v Japan Airlines Co., Ltd., 9 NY3d 351, 360-361 [2007]; Miller v City of New York, 100 AD3d at 561; Agosto v 30th Place Holding, LLC, 73 AD3d 492, 492-493 [1st Dept 2010]; Peluso v ERM, 63 AD3d at 1025-1026).
In Fung, the defendant was contracted to plow snow. The plaintiff alleged that the defendant created or exacerbated a dangerous condition because its failure to salt or sand the area it plowed left open the possibility that the mounds of snow may have melted and refrozen, or that its plowing left a thin sheet of snow. The Court of Appeals held that "by merely plowing the snow, as required by the contract, [the] defendant's actions could not be said to have created or exacerbated a dangerous condition'" and that the defendant owed no duty of care to the plaintiff because the contract did not require the defendant to salt or sand the area absent a request to do so, and no such request had been made (9 NY3d at 361).
In Miller, this Court held that the defendant contractor could not be held liable to plaintiff for injuries sustained as a result of an alleged defect in the roadway where its contract with the utility called for the contractor to leave the trench an inch and a half below grade and the utility failed to raise an issue of fact whether the contractor performed its contractual obligations negligently and created an unreasonable risk of harm to plaintiff (100 AD3d at 561). Contrary to the utility's contention, we found that no issue of fact existed as to whether the defendant breached its contractual duty to "protect and maintain" the 1½-inch-deep trench for five days after completing its work by failing to place cones or barricades in the vicinity (id.).
In Agosto, the defendant contractor was hired to remove the tiles from a lobby floor. Six weeks after the defendant finished its work, the plaintiff tripped on an area of the floor that had not been completed by the contractor hired to install the new flooring. This Court held that the defendant could not be said to have created an unreasonable risk of harm to plaintiff because the contract only required it to remove tiles, and there was no evidence that the defendant failed to exercise due care in performing the contract. Although the contractor had exposed a concrete section of floor, "the creation of that allegedly dangerous condition was precisely what was called for in [its] contract" (73 AD3d at 492-493).
In Peluso, the defendant contractor was required to backfill an excavated parking lot and tamp it down, but not repave it. Approximately two months after the defendant had satisfactorily completed its work, the plaintiff allegedly was injured when she tripped and fell on rocks that had accumulated in the lot. The Second Department held that the contractor owed no duty to the plaintiff and did not affirmatively create a dangerous condition absent evidence it breached its contractual obligation to backfill the excavated areas or assumed a continuing duty to return to the premises and remedy any defects that developed there (63 AD3d at 1025-1026). Further, the defendant justifiably relied on the contract specifications and "reasonably believed that the employer would repave the parking lot after their work was completed, thereby eliminating any dangerous condition likely to cause injury" (id. at 1026).
As in Fung, Miller, Agosto and Peluso, while plaintiff attributes the dangerous condition to Harbour's work, there is no evidence that Harbour breached its contractual obligations or was negligent in the performance of its duties. Harbour removed the tank from the pump room as required and was not contractually obligated to take any action with respect to the preexisting floor opening allegedly exposed by its work. In fact, 1440 Broadway never requested that Harbour take any remedial action with respect to the opening in its punch lists or otherwise, and told Harbour that the work would be done by another contractor. Harbour cannot be held liable to plaintiff for a failure to become "an instrument for good," which is insufficient to impose a duty of care upon a party not in privity of contract with the injured party (see Church v Callanan Indus., 99 NY2d 104, 112 [2002]; Berger v NYCO Plumbing & Heating Corp., 127 AD3d 676, 678 [2nd Dept 2015]). Furthermore, as in Rappaport (127 AD3d 430, 431, supra), the opening in the metal plate was visible to 1440 Broadway and it employees. Indeed, plaintiff [*6]acknowledges that he was fully aware of the existence of the opening and claims that he informed his supervisor about it because of safety concerns. Given these circumstances, the majority's holding would unduly expand an independent contractor's duty of care to a third party (see Church, 99 NY2d at 111).
Accordingly, the complaint should be dismissed as against Harbour. Further, in the absence of any evidence that Harbour breached a duty of care to plaintiff, Harbour is also entitled to summary judgment dismissing 1440 Broadway's cross claims against it for common-law indemnification and contribution (see San Andres v 1254 Sherman Ave. Corp., 94 AD3d 590 [1st
Dept 2012]; Trump Vil. Section 3 v New York State Hous. Fin. Agency, 307 AD2d 891 [1st Dept 2003]).
The Decision and Order of this
Court entered herein on January 18, 2018
is hereby recalled and vacated (157 AD3d
565 [1st Dept 2018]) (see M-871
decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 12, 2018
CLERK



Footnotes

Footnote 1:The exposed area is sometimes described in the briefs as an opening or hole and the area encompassing the opening or hole is at times also described as grating made of metal, a metal grate or a metal plate. For expediency, the area at issue will be referred to here as an exposed opening in a metal plate.