Matter of Mitchell v Eaton's Trucking Serv., Inc. (2018 NY Slip Op 06839)





Matter of Mitchell v Eaton's Trucking Serv., Inc.


2018 NY Slip Op 06839


Decided on October 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 11, 2018


[*1]In the Matter of the Claim of JAMES MITCHELL, Claimant,
v
EATON'S TRUCKING SERVICE, INC., et al., Respondents, and QUALITY CARRIER'S, INC., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: September 6, 2018

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Pritzker, JJ.


Benesch, Friedlander, Coplan & Arnoff, LLP, New York City (Michael J. Barrie of counsel), for appellants.
William O'Brien, State Insurance Fund, Albany (Edward Obertubbesing of counsel), for Eaton's Trucking Service, Inc. and another, respondents.
Barbara D. Underwood, Attorney General, New York City (Steven Segall of counsel), for Workers' Compensation Board, respondent.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from a decision of the Workers' Compensation Board, filed December 23, 2016, which ruled, among other things, that Quality Carrier's Inc. was claimant's special employer liable for 50% of the workers' compensation benefits paid to claimant.
Claimant was hired as a tractor truck driver to haul and deliver goods for Eaton's Trucking Service, Inc. (hereinafter Eaton). Eaton had contracted with Quality Carrier's, Inc. to transport products for Quality's customers. In 2015, claimant filed a workers' compensation claim for injuries to his right hand, wrist, arm and shoulder, identifying both Eaton and Quality as his employer. Following a hearing, a Workers' Compensation Law Judge determined that claimant had an occupational disease of right carpal tunnel syndrome and found that Eaton was his general employer and Quality was his special employer, and that each was liable for 50% of the workers' compensation awards to claimant. On Quality's administrative appeal, the Workers' Compensation Board upheld that determination. Quality and its workers' compensation carrier now appeal.
We affirm. "A special employee is 'one who is transferred for a limited time of whatever duration to the service of another'" (Fung v Japan Airlines Co., Ltd., 9 NY3d 351, 359 [2007], quoting Thompson v Grumman Aerospace Corp., 78 NY2d 553, 557 [1991]). "The question of whether a general employee of one employer is also a special employee of another is an issue for the Board to resolve, and this Court will uphold that determination if the record contains substantial evidence to support the Board's finding, even if contrary evidence also exists" (Matter of Carlineo v Snelling & Snelling, LLC, 90 AD3d 1288, 1290 [2011] [citations omitted]; see Matter of Colamaio-Kohl v Task Essential Corp., 157 AD3d 1103, 1105 [2018]). The issue "is generally a factual one for the Board to resolve" (Matter of Oppedisano v Randall Elec., 285 AD2d 759, 760 [2001]; see Thompson v Grumman Aerospace Corp., 78 NY2d at 557), and requires weighing many factors, none of which is decisive, including "who controls and directs the manner, details and ultimate result of the [claimant's] work" (Thompson v Grumman Aerospace Corp., 78 NY2d at 558; accord Fung v Japan Airlines Co., Ltd., 9 NY3d at 359; Matter of Victor v Steel Style, Inc., 56 AD3d 1099, 1100 [2008]), "the method of payment, the furnishing of equipment, the right to discharge and the relative nature of the work" (Matter of Victor v Steel Style, Inc., 56 AD3d at 1099). Further, "[w]here a claimant is employed by both a general and special employer, the Board is empowered to make an award against either or both of the employers as it sees fit" (Matter of Carlineo v Snelling & Snelling, LLC, 90 AD3d at 1290 [internal quotation marks and citation omitted]; see Matter of Malave v Beef & Bourbon, LLC, 114 AD3d 1006, 1007 [2014]).
The evidence at the hearing established that Eaton was an affiliate of Quality since 2003, pursuant to which Eaton switched all of its customers over to Quality, took over Quality's terminal location and operations, hired all of Quality's employees, and thereafter exclusively provided trucking services for Quality's customers. Eaton interviewed claimant, conducted his road test and hired him, although claimant was required to fill out an employment application bearing Quality's logo and sign a release for Quality to do a background check, and Quality retained the authority to "disqualify" drivers based upon their driving record. While Eaton used its own tractors, it leased the trailers from Quality, which bore both company logos, and Eaton's trucks operated under Quality's Federal Department of Transportation operating license permit number posted on all trucks as Eaton did not have a permit to operate the trucks. Quality provided a week of safety training when claimant started, paid claimant for this training and required claimant to attend mandatory safety meetings, and claimant thereafter consulted with Quality's safety manager several times. While Eaton paid claimant and set his schedule, Quality collected payment from its customers for Eaton's hauls and paid Eaton 85% of the revenues each week. Quality provided liability insurance for all of Eaton's vehicles, and Quality's sales representatives solicited customers whose products Eaton transported. Pursuant to the detailed contractual agreement, Eaton was required to comply with all of Quality's dispatch and transportation management policies and procedures, and drivers were required to notify Quality of any accident or other cargo-related problem.
Given the foregoing, we find that substantial evidence supports the Board's factual determination that claimant was a special employee of Quality (see Matter of Carlineo v Snelling & Snelling, LLC, 90 AD3d at 1290). Looking at "the underlying facts of the parties' relationship" (Fung v Japan Airlines Co., Ltd., 9 NY3d at 359), the evidence established that Eaton and Quality had an arrangement whereby Eaton's drivers, including claimant, hauled products exclusively for Quality's customers and did so in furtherance of Quality's business, and that Eaton operated under Quality's logo and license without which Eaton could not have conducted its hauling operation. Their arrangement was the type of arrangement in which the "employee and equipment of [the] general employer were necessarily used and temporarily assigned to work for th[e] business" of the special employer, which has been recognized as creating a special employment relationship (Thompson v Grumman Aerospace Corp., 78 NY2d at 557). While Quality did not control the day-to-day oversight of claimant, this is not dispositive as Eaton and claimant operated entirely under Quality's authority and pursuant to its policies. As a result, Quality had sufficient control over the "details and ultimate result" of claimant's work, and Quality's working relationship with claimant was "sufficient in kind and degree so that [Quality] may be deemed [to be his] employer" (Fung v Japan Airlines Co., Ltd., 9 [*2]NY3d at 359). The remaining claims raised by Quality and its carrier have been considered and found to lack merit.
Garry, P.J., Egan Jr., Mulvey and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.