Kuti v Sera Sec. Servs. (2020 NY Slip Op 02153)





Kuti v Sera Sec. Servs.


2020 NY Slip Op 02153


Decided on April 2, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 2, 2020

Manzanet-Daniels, J.P., Kapnick, Gesmer, Oing, JJ.


11149 303529/13

[*1]Susan Kuti, Plaintiff-Respondent,
v
Sera Security Services, Defendant-Appellant.


Barry McTiernan & Wedinger, LLC, New York (Laurel A. Wedinger of counsel), for appellant.
Wingate, Russotti, Shapiro & Halperin, LLP, New York (Victor Goldblum of counsel), for respondent.



Order, Supreme Court, Bronx County (Doris M. Gonzalez, J.), entered May 10, 2019, which, insofar as appealed from, denied defendant's motion for summary judgment dismissing the complaint and deferred plaintiff's cross motion for discovery sanctions, unanimously affirmed, without costs.
Plaintiff, a nurse, was injured when she was attacked by a patient at the healthcare facility where she worked. Defendant Sera Security Services (Sera) provided security for the facility pursuant to a contract. After plaintiff commenced a negligence action, Sera moved for summary judgment dismissing the complaint, arguing that it was not liable to plaintiff, either as a third-party beneficiary under the contract or as a result of detrimental reliance (see Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]), and that the assault on plaintiff by a patient was, in any event, an unforseeable act (see Florman v City of New York, 293 AD2d 120, 125-126 [1st Dept 2002]). The motion court denied the motion. Sera appealed, and we now affirm.
It is axiomatic that a finding of negligence requires a finding that defendant breached a duty it owes to plaintiff. "[T]he existence and scope of a duty is a question of law requiring courts to balance sometimes competing public policy considerations" (Espinal, 98 NY2d at 138). "Unlike foreseeability and causation, which are issues generally and more suitably entrusted to fact finder adjudication, the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration" (Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 585 [1994]). A contractual duty, standing alone, generally does not give rise to third-party liability. However, a court may impose third-party liability where the alleged tortfeasor has entirely displaced the other contracting party's duty to maintain safe premises, or where "plaintiff detrimentally relies on the continued performance of the contracting party's duties" (Espinal, 98 NY2d at 140; see also Palka, 83 NY2d at 584).
Here, the motion court correctly determined that the contractual language and deposition testimony were sufficient to defeat Sera's motion for summary judgment to the extent that they raised questions as to whether Sera had a duty to plaintiff, either because she was a third-party beneficiary under the contract with plaintiff's employer, or because she had detrimentally relied on Sera's continued performance of its contractual duties.
The contract does not expressly exclude third-party beneficiaries. Its language raises a question of fact as to whether it "displace[d] and substitut[ed] [onto defendant]. . . a particular safety function designed to protect persons like this plaintiff" (Palka, 83 NY2d at 589; see also Espinal, 98 NY2d at 140).
The contract incorporates by reference the facility's solicitation for proposals and Sera's proposal. Reading these documents as one precludes us from finding that Sera is not solely responsible for the security of premises, and the property and persons on it. The solicitation states that the security vendor shall "provide security services and. . . uniformed security guards, [*2]which will ensure the safety and security of [the] facilities," and "maximize[] safety," and will "provide [the] appropriate level of tour supervision 24 hours per day, 7 days per week." The solicitation specifies that the vendor must provide security guards who have experience "providing security services to homeless individuals[,] . . . homeless families. . . . [and] a population with special needs such as medical conditions and mental health issues." In response to the solicitation's request for guards who have training in, among other things, "arrest procedures," Sera's proposal states that its guards have the ability "to handle emotionally disturbed individuals. . . . [and]. . . enforce restraining procedures." The agreement requires Sera to obtain comprehensive general liability insurance, including coverage for "personal injury, false arrest and assault and battery." It further provides that Sera shall have an independent contractor relationship with the facility, and that nothing in the contract shall be construed to create an employee relationship between them, implying that Sera Security had sole responsibility for training and supervising its guards.
While defendant argues that the contract was intended to require Sera to provide services only to protect against unauthorized entry into the premises and damage to property, we agree with the motion court that the contractual language is ambiguous (see LDIR, LLC v DB Structured Prods., Inc., 172 AD3d 1, 4 [1st Dept 2019]). Accordingly, the court may consider extrinsic evidence of the contractual intent (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]).
As the motion court noted, the testimony of the Sera security guard who responded to plaintiff's call for assistance indicated that he understood his obligation to include ensuring that the patient, who had already assaulted plaintiff by the time he arrived, "not. . . come back and. . . do something to them. . . . or. . . get into a fight with them," and that he therefore approached the patient and "slowly talked to her going back to her door. . . . just to buy time until the police and ambulance comes. . . . My attendance is just to say whatever I need to say to that woman to just keep her calm." He further testified that he and his fellow Sera security guards regularly responded to facility staff's calls for assistance with incidents, including "altercations" and "fighting."
Given this testimony and the contractual language, the motion court properly denied summary judgment on the issue of whether defendant is liable to plaintiff as a third-party beneficiary of the contract.
Similarly, the motion court also properly concluded that plaintiff raised questions of fact sufficient to overcome summary judgment as to whether Sera is liable to plaintiff under a theory of detrimental reliance based on plaintiff's allegation that the Sera security guard promised to respond to plaintiff's call for assistance, but failed to do so in a timely manner or failed to call the police promptly or at all (see Espinal, 98 NY2d at 140). Defendant's security guard testified that he could not recall when he received the call from his colleague directing him to go to the floor where plaintiff worked, whether he was advised of any details of what was occurring, or how long it took him to get there. He further testified that he was trained to investigate calls prior to determining whether to call the police, and that, if a staff member called the security station about an incident, it was the Sera security guards' responsibility to call 911 or the police when warranted.
Plaintiff testified that she called the security guard station three times to report that a patient was behaving in an aggressive and threatening manner, and that the lobby security guard assured her that he was sending a guard to assist her. She further testified that approximately 5 to 10 minutes passed between her first call and the assault, that the assault lasted approximately 3 or 4 minutes, and that the security guard arrived after she had been assaulted. It is not clear when the police were called or who called them, but they arrived and arrested the patient after the security guard appeared. Given the testimony by plaintiff and the Sera security guard to the effect that Sera staff undertook to respond to plaintiff's call for help, and the discrepancy between the parties' claims about the length of time it took for a Sera security guard to respond, plaintiff raised questions of fact as to whether Sera might be liable to her under a theory of detrimental reliance.
Moreover, while the motion court declined to credit surveillance video offered by Sera in [*3]support of its claim that the security guard arrived "one minute" after plaintiff called for help, the court should not have considered the video at all for two reasons. First, as the motion court noted, it was offered with defendant's reply papers and plaintiff had no opportunity to respond to it. Second, it was not authenticated, and thus did not constitute evidence in admissible form, as required on a motion for summary judgment (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
The motion court also correctly denied summary judgment as to whether or not the assault on plaintiff was foreseeable. A criminal act may result in liability for the party with a duty to maintain safety when he or she "knows or has reason to know that there is a likelihood that third persons may endanger the safety of those lawfully on the premises," including where the responsible party is aware of prior similar acts occurring on the premises (Florman, 293 AD2d at 124 [1st Dept 2002]). Moreover, it is not necessary that "the past experience relied on to establish foreseeability be of criminal activity at the exact location where plaintiff was harmed or that it be of the same type of criminal conduct to which plaintiff was subjected" (Jacqueline S. v City of New York, 81 NY2d 288, 294 [1993]).
Here, the contract itself appears to contemplate the likelihood of incidents like the one at issue, since the contract requires that Sera security guards have the ability to "handle emotionally disturbed individuals," "enforce restraining procedures," and be trained in "arrest procedures." In addition, the Sera security guard who responded to plaintiff's call for help testified that he and his colleagues had previously received calls from facility employees on the floor where plaintiff worked seeking assistance with patients who had become "angry." During those incidents, he testified that they would "have to take the patient down and try to calm him the best — - as much as we can do." He also testified to receiving as many as five calls for assistance in one day from various locations on the premises because "a lot of stuff happens," including "altercations" and "fighting." Plaintiff testified that the patient who assaulted her had a history of aggressive behavior and resistance to authority, and that staff had sent the patient "to psych several times."
Under these circumstances, the motion court properly found that Sera had failed to meet its burden, as the proponent of a summary judgment motion, to demonstrate an absence of prior assaults or similar incidents on the premises (see Sanchez v State of New York, 99 NY2d 247, 254 [2002]). Even if Sera had made a prima facie showing, plaintiff has raised a question of fact sufficient to overcome Sera's summary judgment motion on the issue of foreseeability.
Finally, we find that the motion court, in the exercise of its broad discretion in such matters (CPLR 3126; Ortega v City of New York, 9 NY3d 69, 76 [2007]), properly deferred plaintiff's cross motion for discovery sanctions to the trial judge to determine whether plaintiff had suffered any prejudice (see Linarello v City Univ. of N.Y., 6 AD3d 192, 194 [1st Dept 2004]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 2, 2020
CLERK